UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
ROBERT BARBERA,                                                  :
:
            Plaintiff,                                 :
:     24-cv-3535 (LJL)
       -v-                                                       :
:     MEMORANDUM AND
GRAILED, LLC,                                                    :     ORDER
:
            Defendant.                                :
:
-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/5/2025

LEWIS J. LIMAN, United States District Judge:

      Plaintiff Robert Barbera ("Plaintiff") filed a complaint in this case on May 8, 2024, Dkt. No. 1, and an Amended Complaint on June 4, 2024, Dkt. No. 10. He alleges that Defendant Grailed Inc. ("Defendant"), infringed his copyright in a photograph of American actor and director Jonah Hill (the "Photograph") by publishing the Photograph on its fashion website without permission or authorization. Dkt. No. 1 ¶¶ 2–4, 22, 24, 26, 28, 47–50, Ex. Nos. 1–2; Dkt. No. 10 ¶¶ 2–4, 22, 24, 26, 28, 47–50, Ex. Nos. 1–2. The complaints were signed by Craig Sanders of the Sanders Law Group. Dkt. No. 1 at 7; Dkt. No. 10 at 7.

      Three motions are currently pending before the Court: (1) Defendant's motion for sanctions pursuant to Federal Rules of Civil Procedure 16 and 37, Dkt. No. 22; (2) Plaintiff's motion to strike Defendant's motion for sanctions, Dkt. No. 26[1]; and (3) Defendant's motion for

---

[1] Plaintiff's motion to strike is based on the argument that Defendant failed to meet and confer with Plaintiff or to move for a pre-motion conference before moving for sanctions. Dkt. No. 26. The Court has already rejected these arguments. *See Barbera v. Grailed, LLC*, 2024 WL 4836616, at *2 (S.D.N.Y. Nov. 20, 2024) (noting that "[t]he Court's individual practices state that no request for a pre-motion discovery conference is required" and that "there is no loophole wherein a party may escape a motion to compel, or a ruling on such motion, simply by stonewalling its opposing counsel and declining to confer"). The motion to strike is therefore denied.

contempt sanctions and for sanctions pursuant to Federal Rules of Civil Procedure 16 and 37, Dkt. No. 34.

Familiarity with the prior proceedings in this action is presumed. On August 13, 2024, the Court held an initial pretrial conference and entered a Case Management Plan and Scheduling Order ("Case Management Plan"). Aug. 13, 2024 Minute Entry; Dkt. No. 19. The Case Management Plan ordered that Rule 26(a)(1) initial disclosures be served no later than August 27, 2024, initial requests for production of documents be served no later than September 12, 2024, requests for admission be served no later than September 12, 2024, fact discovery be completed no later than December 11, 2024, and all discovery be completed no later than February 25, 2024. Dkt. No. 19. The Case Management Plan was submitted by Jaymie Sabilia-Heffert, Esq., on behalf of Plaintiff's counsel, the Sanders Law Group, and by Eleanor M. Lackman, Esq., of Mitchell Silberberg & Knupp LLP, for Defendant. *Id.*

On November 12, 2024, Defendant filed its first motion for sanctions, claiming that Plaintiff did not comply with any of the interim discovery deadlines ordered by the Court including the deadlines for serving initial disclosures, serving timely responses and objections to Defendant's discovery requests, serving properly verified interrogatory responses, and attending his deposition. Dkt. Nos. 22–24. The next day, Defendant filed a letter motion seeking to compel Plaintiff to supplement his interrogatory responses and to produce documents. Dkt. No. 25.

On November 20, 2024, the Court issued a Memorandum and Order compelling Plaintiff to supplement his interrogatory responses and document production by November 27, 2024. Dkt. No. 31; *Barbera*, 2024 WL 4836616. The Court did not rule on the motion for sanctions at

2

that time and thus did not address the issues of Plaintiff's failure to serve initial disclosures or to attend his deposition.

On December 19, 2024, Defendant filed a second motion for sanctions on the basis that Plaintiff had failed to comply with the Court's November 20 Order. Dkt. Nos. 34–36.

On March 5, 2025, the Court held a conference to address the motions for sanctions.

Between the two motions for sanctions, Defendant identifies three main ways in which Plaintiff has failed to comply with his discovery obligations and the orders of this Court: (1) Plaintiff failed to serve initial disclosures; (2) Plaintiff unilaterally attempted to cancel his deposition and did not attend the noticed deposition; and (3) Plaintiff's discovery responses remain deficient despite the Court's November 20 Order. The Court reviews each in turn and then discusses the appropriate remedy.

I.      **Plaintiff's Noncompliance**

    A.      **Failure to Serve Initial Disclosures**

Defendant argues that Plaintiff has failed to serve initial disclosures which are now many months past-due. Pursuant to the Case Management Plan, initial disclosures were due no later than August 7, 2024. Dkt. No. 19. Defendant asserts that Plaintiff has failed to provide any initial disclosures to date. Dkt. No. 24 ¶ 6; Dkt. No. 36 ¶ 7.

Plaintiff sent an email to Defendant on October 16, 2024, which purported to attach a copy of Plaintiff's initial disclosures, but in fact did not. Dkt. No. 24-9; Dkt. No. 24 ¶ 6. Plaintiff's counsel attempts to justify his failure to provide initial disclosures by stating that his paralegal tried to send the initial disclosures to Defendant at the email address defense counsel used at her prior law firm. Dkt. No. 29 at 1–2. Specifically, the paralegal has submitted a declaration stating that on Monday, September 9, 2024, at the direction of counsel, she sent the initial disclosures to Defendant's counsel, Ms. Lackman, through an email addressed to

Ms. Lackman at the email address the paralegal had on file. Dkt. No. 30 ¶ 4; Dkt. No. 30-1. That email address was associated with the cdas.com domain—indicating that it was registered to Cowan, DeBaets, Abrahams & Sheppard LLP, Ms. Lackman's former employer. Dkt. No. 30-1. Mr. Sanders was copied on the email correspondence. *Id.*

On September 18, 2024, the paralegal received an email from Ms. Lackman stating that she was no longer at that law firm and providing her current contact information. Dkt. No. 30 ¶ 5; Dkt. No. 30-2. Ms. Lackman's September 18 email stated that the paralegal should have received an autoreply informing her that, as of June 17, 2019, Ms. Lackman was no longer employed by Cowan, DeBaets, Abrahams & Sheppard LLP, and that Ms. Lackman could instead be reached at her Mitchell Silberberg & Knupp LLP email—the same email address listed on the docket of this case, the Case Management Plan and multiple other filings in this case. Dkt. Nos. 8, 13, 17, 19, 30-2. Ms. Lackman also states that she does not recall ever corresponding with the paralegal at a point when the cdas.com email would have been active, and instead the paralegal "was on several emails with me at my current address regarding the present matter." Dkt. No. 33 ¶ 5.

Ms. Lackman's September 18 email stated in part:

> Please take care to review [the autoreply email] and follow up, as I did not receive the communication from Monday from your office (sent to CDAS for reasons I can't figure out), and this could have caused a real issue in the case. Mr. sanders has resent the communications to me.

Dkt. No. 30-2. The paralegal avers that, because the September 18 email did not ask that the initial disclosures be resent and stated that Mr. Sanders had "resent the communication," the paralegal assumed that nothing further needed to be done. Dkt. No. 30 ¶¶ 6–7. The paralegal avers that she was not aware that Ms. Lackman did not receive the initial disclosures until October 16, 2024, at which time she sent them to Defendant. Dkt. No. 30 ¶ 8.

4

Ms. Lackman disputes the paralegal's account and states that the September 18 email related to a separate claim, not this action and that the documents that Mr. Sanders sent her had nothing to do with the initial disclosures in this case. Dkt. No. 33 ¶¶ 4, 6. Ms. Lackman also disputes that Plaintiff sent the initial disclosures to her on October 16, 2024. *Id.* ¶ 6. Indeed, the document that the paralegal claims to show Ms. Lackman's response to service of the initial disclosures is merely a single email from the paralegal to Ms. Lackman, copying Mr. Sanders. Dkt. No. 30-3. It does not contain any response by Ms. Lackman and, although the body of the email states that a copy of Plaintiff's initial disclosures are attached, the list of attachments includes only Plaintiff's discovery demands, requests for production, interrogatories, and requests for admission. *Id.* The evidence thus does not establish that the initial disclosures were sent to Defendant on October 16, 2024. At the conference on March 5, 2025, Defendant's counsel stated that Defendant still had not received Plaintiff's initial disclosures.

Plaintiff's account does not excuse the failure to provide initial disclosures. It is apparent on its face that Ms. Lackman's September 18 email was not a response to the paralegal's September 9, 2024 email. It refers to "the communication from Monday," but the preceding Monday was September 16, 2024, and not September 9, 2024. Dkt. No. 30-2. Indeed, Plaintiff does not refute Lackman's sworn statement that the email relates to a different matter. *Id.* Plaintiff also provides no explanation for why the September 9, 2024 email was sent to the defunct cdas.com email in the first place when the paralegal had previously corresponded with Ms. Lackman at her correct email address and the correct address was listed throughout the docket. Dkt. Nos. 8, 13, 17, 19, 30-2; Dkt. No. 33 ¶ 5.

Federal Rule of Civil Procedure 5 states that discovery papers may be served on a party through electronic means but that such service "is not effective if the filer or sender learns that it

5

did not reach the person to be served." Fed. R. Civ. P. 5(b)(2)(E). Although the September 18, 2024 communication would have put Plaintiff on notice that the paralegal had been using the wrong email address for Ms. Lackman, it could not have conveyed to Plaintiff that Ms. Lackman had received the initial disclosures. It was inexcusable at that point not to serve initial disclosures.

Furthermore, even if the paralegal did believe that Mr. Sanders had already resent the initial disclosures, Mr. Sander himself was copied on the September 18 email and would have known that he had not. Dkt. No. 30-2. Plaintiff provides no excuse for Mr. Sanders' failure to direct the paralegal to resend the disclosures or to do so himself. An attorney is "responsible for the actions of non-lawyers acting at his direction, and for his failure to responsibly supervise them." *In re Sobolevsky*, 430 F. App'x 9, 18 (2d Cir. 2011) (summary order); *accord Friedman v. State Univ. of N.Y. at Binghamton*, 2006 WL 2882980, at *4 (N.D.N.Y. Oct. 5, 2006) ("[P]aralegals work under the supervision of attorneys, who are fully responsible for such representation." (quotation omitted)). Mr. Sander's failure to properly supervise the service of initial disclosures "bespeak[s] of something far more serious than a lack of competence or ability." *In re Jaffe*, 585 F.3d 118, 123 (2d Cir. 2009). It "exhibit[s] an indifference to the rights and legal well-being of h[is] clients, and to h[is] professional obligations." *Id.*

Plaintiff's failure to serve initial disclosures continued despite several more communications which put Plaintiff on notice of his obligation to rectify the issue. On October 25, 2024, Defendant sent Plaintiff a detailed letter outlining his violations including his failure to serve initial disclosures. Dkt. No. 24 ¶ 8. The letter notified Plaintiff that, absent a response by October 31, 2024, Defendant intended to seek sanctions including dismissal of the action in its entirety. *Id.* Plaintiff never responded. *Id.* Defendant's first motion for sanctions also identified

the issue. Dkt. Nos. 23–24. Nonetheless, by December 19, 2024, Plaintiff still had not served his initial disclosures. Dkt. No. 36 ¶ 7. Defendant filed a second motion for sanctions at least in part on that basis. Dkt. Nos. 34–36. Plaintiff still did not serve the disclosures. Dkt. No. 43 at 9. It appears that plaintiff still has not served his initial disclosures on Defendant.

## B. Attempt to Cancel His Deposition

On September 10, 2024, Defendant served a notice of deposition for Plaintiff, noticing his deposition for October 11, 2024 at 9 a.m. in the office of Defendant's counsel. Dkt. No. 24 ¶¶ 3–4. Defendant proceeded to prepare for the deposition, including by hiring a vendor to arrange for a court reporter to attend. *Id.* ¶ 4. On October 10, 2024, the vendor informed Defendant's counsel that Plaintiff's counsel had informed the vendor that the deposition was not going forward. *Id.* Plaintiff had not made any such communication to Defendant. *Id.* Defendant informed the vendor that the deposition would proceed as scheduled and the vendor stated that it would relay that plan to Plaintiff's counsel. *Id.* Plaintiff never responded. *Id.* The court reporter and Plaintiff's counsel waited nearly an hour for Plaintiff to arrive to the deposition. *Id.* He never appeared. *Id.*

Plaintiff's excuse is that, although he received the notice of deposition, Plaintiff never inquired "whether counsel or Plaintiff would be available on the unilaterally selected date." Dkt. No. 29 at 8–9. "Under such circumstances," Plaintiff contends, "the date set in a unilateral notice is generally considered a place-holder date, subject to confirmation." *Id.* Plaintiff provides no authority for this proposition. Notably, Plaintiff does not represent to the Court that he or his counsel was actually unavailable on the noticed date—only that Defendant had not confirmed his availability. *Id.*

Even if Plaintiff believed the date to be subject to change, it was his obligation to raise the issue if he or his counsel were unavailable on the noticed date. *See Boadi v. Policella Farms*

7

*Sales*, 2024 WL 3223905, at *4 (E.D.N.Y. June 29, 2024); *Smith v. Rock*, 2014 WL 1466601, at *1 (N.D.N.Y. Apr. 15, 2014); *see also* Fed. R. Civ. P. 37(d)(2) (the failure to attend a deposition "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)"). Plaintiff claims that "Plaintiff was at all times prepared to set a mutually agreeable date for a deposition, but was unable to do so, as Defendant did not make any efforts to confirm a date." Dkt. No. 29 at 9. That protestation of impossibility is simply untrue. Telephones work both ways. Plaintiff would have been able to set a mutually agreeable date for the deposition by contacting Defendant through email or telephone, among other means of correspondence, and communicating any issues with the selected dates. Plaintiff chose not to do so and attempted instead to cancel the deposition by speaking to the vendor only the day before it was scheduled to take place.

      C.      **Deficient Discovery Responses**

Plaintiff served his responses and objections to Defendant's initial set of requests for production and requests for interrogatories on October 11, 2024—after the deadline for timely service elapsed. Dkt. No. 31 at 2. Plaintiff's responses and objections were also deficient in several ways. Plaintiff did not serve verified interrogatories and failed to respond to certain interrogatories and requests for production on the basis of insufficient, boilerplate objections *Id.* at 3–4. On November 20, 2024, the Court ordered Plaintiff to supplement his interrogatory responses and document production by November 27, 2024. *See generally id.* The Court noted that "a litigant's 'failure to respond or object to a discovery request in a timely manner' waives any objection that may have been available." *Id.* at 2 (quoting *UBS Int'l Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*, 2010 WL 743371, at *3 (S.D.N.Y. Feb. 24, 2010) (citing *Cohalan v. Genie Indus., Inc.*, 276 F.R.D. 161, 163 (S.D.N.Y. 2011)). Therefore, given the absence of any valid explanation for Plaintiff's failure to serve its objections in a timely manner, the Court

8

held that "a finding of waiver is appropriate." *Id.* at 3 (quoting *Eldaghar v. City of N.Y. Dep't of Citywide Admin. Servs.*, 2003 WL 22455224, at *1 (S.D.N.Y. Oct. 28, 2003)) (citing *Cambridge Cap. LLC v. Ruby Has LLC*, 2022 WL 889143, at *5 (S.D.N.Y. Mar. 24, 2022)).

Plaintiff served his supplemental responses to the interrogatories and document requests on November 27, 2024. Dkt. No. 36 ¶ 2; Dkt. Nos. 36-2, 36-3. Plaintiff did not produce any supplemental documents until December 3, 2024, and Plaintiff did not purport to complete the supplemental production until December 16, 2024. Dkt. No. 36 ¶ 3; Dkt. No. 36-4. Defendant objects to the untimeliness of production. Defendant additionally argues that the supplemental document productions are substantively deficient because Plaintiff failed to produce responsive documents which either "must exist" or which Plaintiff indicated that he would produce. Dkt. No. 36-5. Such documents include the terms of service Defendant identified as the operative agreement and Plaintiff's licensing agreements with websites that have been selling the Photograph and paying Plaintiff royalties. *Id.* Plaintiff claims that he produced the documents late because the burden of production precluded earlier service. Dkt. No. 41 ¶¶ 8–12, 20–21; Dkt. No. 42 at 3. He also claims that his productions were not incomplete and that he produced all responsive documents in his possession. Dkt. No. 41 ¶¶ 20–22; Dkt. No. 42 at 4. The Court credits these representations and does not impose sanctions based on Plaintiff's late and purportedly incomplete productions.

However, Plaintiff's supplemental production inappropriately withheld documents on the basis of objections that he had waived by failing to make timely objections. Plaintiff withheld 523 emails on the basis of attorney-client privilege. Dkt. No. 36-7. Plaintiff also withheld documents on the basis of non-disclosure agreements with other entities. Dkt. No. 36-3 at 22.

9

Defendant also served contention interrogatories on Plaintiff on November 11, 2024, to which Plaintiff has failed to serve any objections or answers. Dkt. No. 36 ¶ 7. Plaintiff provides no explanation for this failure.

## II. Propriety of Sanctions

Defendant seeks sanctions in the form of dismissal of this case, or, in the alternative, limiting sanctions. Dkt. No. 23 at 4–14. Defendant additionally requests that Plaintiff be ordered to pay the expenses Defendant incurred as a result of his discovery violations. *Id.* at 14–16.

Federal Rule of Civil Procedure 37(c)(1) provides that if a party fails to provide the information or identify a witness required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). In addition, the Court "may impose other appropriate sanctions" including "payment of the reasonable expenses, including attorney's fees, caused by the failure." *Id.* Federal Rule of Civil 37(d)(1)(A) also provides for sanctions against a party who, "after being served with proper notice, [fails] to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A). The Court may also issue sanctions against a party who fails to obey a scheduling order or an order to provide or permit discovery. *See* Fed. R. Civ. P. 16(f), 37(b)(2)(A).

A district court has "wide discretion in sanctioning litigants appearing before" it. *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 177 (2d Cir. 2008) (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006)). However, "dismissal with prejudice is a harsh remedy to be used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault' by the non-complaint litigant." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)).

Numerous factors are relevant to the exercise of this discretion, "including: (1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance, and (5) whether the non-compliant party had been warned of the consequences of his non-compliance." *Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 208 (S.D.N.Y. 2002); *accord S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010);*Embuscado v. DC Comics*, 347 F. App'x 700, 700–01 (2d Cir. 2009) (summary order). "In addition, an award of sanctions under Rule 37 should effectuate its three purposes: (1) ensuring the disobedient party does not benefit from non-compliance; (2) obtaining compliance with discovery orders; and (3) providing a general deterrent in the particular case and litigation in general." *Handwerker*, 211 F.R.D. at 208.

The first, third, fourth, and fifth factors weigh in favor of dispositive sanctions. "Non-compliance may be deemed willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Nieves v. City of New York*, 208 F.R.D. 531, 536 (S.D.N.Y. 2002) (quotation omitted). Plaintiff's failure to serve initial disclosures despite repeatedly being put on notice that he had not yet provided the disclosures, attempt to cancel his deposition and failure to attend the same, assertion of waived objections, and failure to respond to Defendant's contention interrogatories all appear to be willful. *See, e.g.*, *Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 288 (S.D.N.Y. 2024) (finding noncompliance willful in light of plaintiffs' continued failure to comply with discovery obligations and inability to provide any justification); *Huang v. Shanghai City Corp.*, 2020 WL 7248819 (S.D.N.Y. Dec. 9, 2020) (imposing dismissal sanctions where plaintiff unilaterally cancelled and failed to attend her own deposition); *Schuster v. Charter Commc'ns, Inc.*, 2021 WL 1317370, at *6 (S.D.N.Y. Apr. 8, 2021) (Sullivan, J.) (similar). There

is no indication that Plaintiff's discovery conduct is the result of mere inadvertence. Rule 37(c)(1) was designed to prevent litigants by "sandbagging" one another through reliance on surprise witnesses or facts. *See Ventra v. United States*, 121 F. Supp. 2d 326, 331–32 (S.D.N.Y. 2000). Now that discovery has closed without the identification of any further witnesses, Defendant would be prejudiced by the introduction of such unnoticed testimony. *See Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607–08 (S.D.N.Y. 2004). The duration of Plaintiff's noncompliance also weighs in favor of sanctions. It has been approximately seven months since Plaintiff's initial disclosures were due—a time the Second Circuit has indicated may warrant dispositive sanctions. *See Schuster*, 2021 WL 1317370, at *7 (collecting cases). And Plaintiff has long been on notice of the consequences of noncompliance in the form of Defendant's October 25 letter. Dkt. No. 24 ¶ 8. Furthermore, Plaintiff is a repeat litigant—since 2021, Plaintiff's current counsel has filed nearly thirty copyright infringement lawsuits on Plaintiff's behalf. Dkt. No. 24-11; *see Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2018 WL 4760345, at *10 (S.D.N.Y. Sept. 28, 2018) (imposing sanctions where defendant was "no stranger to federal litigation").

The only factor weighing against dismissal sanctions is the availability of lesser sanctions. "[A] court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future." *Farmer v. Hyde Your Eyes Optical, Inc.*, 2015 WL 2250592, at *8 (S.D.N.Y. May 13, 2015) (quotation omitted). Defendant has not shown that no sanction besides dismissal will suffice to compel Plaintiff's compliance. The Court therefore finds that dismissal is not warranted at this time, but may revisit the issue if Plaintiff's pattern of noncompliance continues. The Court similarly finds that the adverse inferences Defendant requests the Court to draw are not warranted.

Preclusive and monetary sanctions are more appropriate at this time. Given Plaintiff's continued failure to serve initial disclosures and to attend his own deposition, Plaintiff is ordered to sit for an in-person deposition at his own expense and is precluded from introducing testimony from any witness other than himself. *See Abraham v. Leigh*, 471 F. Supp. 3d 540, 555 (S.D.N.Y. 2020) (excluding testimony of undisclosed witnesses); *Ebewo*, 309 F. Supp. 2d at 607–08 (same). Defendant shall notice the deposition to take place before the end of March. Plaintiff shall bear the costs and expenses of the deposition, including attorney's fees for a single attorney for the Defendant for the duration of the deposition. Plaintiff shall not be required to pay for the cost of Defendant's attorney's preparation for the deposition.

Plaintiff is also ordered to provide responses to Defendant's contention interrogatories and to serve his initial disclosures within seven days of this Order. Because Plaintiff failed to provide timely objections, he has waived any objection to the interrogatories. *See* Dkt. No. 31 at 2–3; *UBS Int'l Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*, 2010 WL 743371, at *3 (S.D.N.Y. Feb. 24, 2010).

Plaintiff is ordered to produce all documents responsive to Defendant's document requests. Any documents withheld on the basis of privilege, a non-disclosure agreement, or any other waived objection must be produced within seven days of this Order.

The Court also awards monetary sanctions. "Monetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled." *Suarez v. Liquid Blue, Inc.*, 2024 WL 2058166, at *2 (S.D.N.Y. May 7, 2024) (quoting *Seena Int'l, Inc. v. One Step Up, Ltd.*, 2016 WL 2865350, at *11 (S.D.N.Y. May 11, 2016)). "Because Rule 37(b)(c)(2) requires that the Court award attorneys' fees and costs— unless the failure to comply was 'substantially justified' or 'other circumstances make an award

of expenses unjust,' Fed. R. Civ. P. 37(b)(2)(C), neither of which is applicable here—Defendant is entitled to attorneys' fees and costs incurred in connection with its efforts to obtain the discovery to which it is entitled." *Id.* at *3. In particular, Defendant is entitled to reasonable attorneys' fees and costs with respect to both motions for sanctions, the October 11 deposition, and the motion to strike. Unless the parties reach an agreement regarding the amount of monetary sanctions, Defendant shall submit a fee application within thirty days of this Order. Plaintiff may respond to the fee application within fourteen days of the application. Defendant may file a reply in support of its fee application within seven days of Plaintiff's opposition, if any.

## CONCLUSION

Defendants' motions for sanctions are granted in part and denied in part. Plaintiff's motion to strike is denied.

The deadline for summary judgment motions is extended from April 7, 2025 to April 21, 2025.

The Clerk of Court is respectfully directed to close Dkt. Nos. 22, 26, and 34.


SO ORDERED.

Dated: March 5, 2025
      New York, New York                         LEWIS J. LIMAN
                                                   United States District Judge