**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROBERT BARBERA,

               Plaintiff,

v.

GRAILED, LLC,

            Defendant.

Case No: 1:24-cv-03535-LJL

Hon. Lewis J. Liman

## MEMORANDUM OF LAW IN OPPOSITION TO
## <u>DEFENDANT'S THIRD MOTION FOR SANCTIONS</u>

**SANDERS LAW GROUP**

Jonathan M. Cader, Esq.
Craig B. Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, New York 11553
Email: jcader@sanderslaw.group
Tel: 516-203-7600
*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

COUNTERSTATEMENT OF FACTS ............................................................................ 2

ARGUMENT ....................................................................................................................... 8

I.     STANDARD OF REVIEW ................................................................................ 10

II.    DUPLICATIVE SANCTIONS SHOULD NOT BE GRANTED ..................... 11

III.   DISMISSAL SANCTIONS ARE NOT WARRANTED ................................. 11

IV.   PLAINTIFF'S OWNERSHIP OF THE PHOTOGRAPH IS NOT IN QUESTION ......... 15

V.    PLAINTIFF SHOULD NOT BE HELD IN CONTEMPT ............................. 16

VI.   NEITHER PLAINTIFF NOR THE FIRM MADE MISREPRESENTATIONS TO THE COURT ................................................................................................ 19

VII.  THERE IS NO "PATTERN OF MISCONDUCT" ....................................... 22

CONCLUSION .................................................................................................................. 24

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agiwal v. Mid Island Mortg. Corp.*,
    555 F.3d 298 (2d Cir. 2009)..................................................................................... 23

*Bee Creek Photography v. Fronks LLC*,
    2024 WL 3669866 (W.D. Tex. Aug. 2, 2024), *adopted*, 2024 WL 3898110 (W.D. Tex. Aug.
    20, 2024), *adopted*, 2024 WL 3898110 (W.D. Tex. Aug. 20, 2024)...................................... 21

*Bee Creek Photography v. Lonestar Cap. Holdings LLC*,
    2024 WL 3158165 (W.D. Tex. June 6, 2024) *adopted*, 2024 WL 3152387 (W.D. Tex. June 24,
    2024) ................................................................................................................... 21

*Bobal v. Rensselaer Polytechnic Inst.*,
    916 F.2d 759 (2d Cir. 1990)....................................................................................... 23

*BWP Media USA Inc. v. Urbanity, LLC*,
    696 F. App'x 795 (9th Cir. 2017) ............................................................................... 21

*BWP Media USA, Inc. v. Internet Brands, Inc.*,
    2016 WL 7626445 (C.D. Cal. Oct. 13, 2016) .................................................................. 21

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
    814 F.3d 91 (2d Cir. 2016).......................................................................................... 9

*E.E.O.C. v. Local 638*,
    81 F.3d 1162 (2d Cir. 1996)......................................................................................... 9

*Fonar Corp. v. Domenick*,
    105 F.3d 99 (2d Cir. 1997).......................................................................................... 14

*Int'l Longshoremen's Assn. v. Philadelphia Marine Trade Assn.*,
    389 U.S. 64, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967) ............................................................ 9

*M. Harvey Rephen & Assocs., P.C. v. Chase Bank USA, N.A.*,
    853 F. App'x 690 (2d Cir. 2021) ................................................................................... 9

*S.E.C. v. Durante*,
    No. 01 CIV. 9056 DAB AJP, 2013 WL 6800226 (S.D.N.Y. Dec. 19, 2013), report and
    recommendation adopted, No. 01 CIV. 9056 DAB, 2014 WL 5041843 (S.D.N.Y. Sept. 25,
    2014), aff'd, 641 F. App'x 73 (2d Cir. 2016) ................................................................... 9

*Usherson v. Bandshell Artist Mgmt.*,
    No. 19-CV-6368 (JMF), 2020 WL 3483661 (S.D.N.Y. June 26, 2020), aff'd in part sub nom.
    *Liebowitz v. Bandshell Artist Mgmt.*, 858 F. App'x 457 (2d Cir. 2021), and aff'd sub nom.
    *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021)........................................... 21

*Viral DRM, LLC v. Rhino Towing Servs.*, Inc.,
   2024 WL 4495482 (C.D. Cal. Oct. 15, 2024) ........................................................................... 21

*Ward v. Credit Control Servs., Inc.*,
   2022 WL 2048707 (E.D. Cal. June 7, 2022) ............................................................................ 21

**Rules**
Fed. R. Civ. Pro. 16 ................................................................................................................. 1
Fed. R. Civ. Pro. 37 ................................................................................................................. 1

Plaintiff, Robert Barbera ("*Plaintiff*"), respectfully submits the instant Memorandum in opposition to the third motion for sanctions pursuant to Fed. R. Civ. Pro. 16(f) and/or Fed. R. Civ. Pro. 37 filed by the defendant, Grailied, LLC ("*Defendant*") and for dismissal of Plaintiff's Complaint.

## PRELIMINARY STATEMENT

It cannot be disputed that Plaintiff made mistakes in this case; mistakes of the type that cannot and should not occur. It also cannot be disputed that Plaintiff has paid for those mistakes in the sanctions imposed by this Court's Order dated March 5, 2025. Dkt. No. 49. Since then, however, Plaintiff has done everything possible to comply with that Order, regardless of whether he considered Defendant's positions tenable. Notwithstanding Plaintiff's efforts, Defendant claimed that Plaintiff's efforts were deficient in one way or another. Although Plaintiff did not agree, he did not protest. Instead, he produced additional documents, and continued to produce additional documents and supplemental responses, all in an effort to resolve Defendant's objections. However, despite Plaintiff's efforts, Defendant found what it considered to be further deficiencies. Again, Plaintiff did not object or resist but, in good faith, attempted to fill any gaps Defendant claimed to exist. Despite Plaintiff's timely production of documents in response to the Court's Order and his continued production of documents in response to Defendant's objections, regardless of relevance or how tenuous the asserted deficiency, Defendant now seeks further sanctions against both Plaintiff and the Firm.

Defendant's application should be denied, insofar as it is incongruous with the case law and Rules of Court and is dehors the record in this case. More specifically, Defendant's asks the Court to apply a binary rule that does not otherwise exist. According to Defendant's reasoning, if a party's production or disclosure is claimed to be incomplete by the receiving party for any reason,

1

the deficiency would be incurable and the producing party would be subject to preclusive Orders, negative inferences, or other sanctions, regardless of that party's efforts to cure the claimed deficiency. This is not what the Rules or case law provides. Indeed, if Defendant's position were correct, the Rules would not require parties to supplement their disclosures or other productions up until the time of trial.

Even were this not the case, the motion should still be denied because it references events specifically contradicted by the record. By way of example, Defendant argues that Plaintiff's production is deficient because he produced no correspondence regarding the letter purportedly sent to Grailed on March 27, 2023. This statement is demonstrably false insofar as the letter dated March 21, 2023 (and sent on March 17, 2023) was produced  as BARBERA..329-30 and was introduced as Exhibit FF at Plaintiff's deposition. In other instances more fully described below, Defendant claims that other documents were not produced when, in fact, the documents were produced prior to the filing of this motion. As a result, it is evident that this motion was drafted and was going to be filed regardless of Plaintiff's efforts. Simply, the record evidence shows that Plaintiff has established a *prima facie* claim for liability (ownership of the Photograph by Plaintiff and unauthorized copying by Defendant). Insofar as Defendant cannot prevail on the merits, it has expended significant efforts to attempt to win on procedure (or to otherwise make it financially prohibitive for Plaintiff to fight on these fronts). Regardless, Plaintiff asks the Court to carefully consider both Defendant's motivation and its issuance of erroneous statements of fact in connection with this motion in that context and to deny Defendant's requested relief in its entirety.

## COUNTERSTATEMENT OF FACTS

Defendant's motion asks the Court to find Plaintiff in contempt and to sanction both he and the undersigned Firm for what Defendant describes as a "laundry list" of reasons. It is respectfully

submitted that Defendant's arguments should be rejected insofar as a review of the record shows that it portrays a different picture than the one Defendant endeavors to paint. For the Court's ease of reference and comparison, Plaintiff provides the following table, reciting Defendant's allegations and the evidence to the contrary:

| Page[1] | Defendant's Allegation | Contrary Evidence |
|---|---|---|
| 1 | Plaintiff testified that his general practice is to completely purge all emails, text messages, and documents within a year—regardless of whether a federal lawsuit suit has been filed in relation to such documents (citing *Dkt. No.* 55-1 at 217:7-17. | Plaintiff testified that if a lawsuit is pending, he would not delete relevant documents. TR at 215:5-9. |
| 2 | Plaintiff and his counsel have repeatedly mislead or outright lied to the Court including by: (1) pleading a date of discovery for the alleged infringement in the Complaint ███████████. | During Plaintiff's deposition, Defendant introduced a printout of its webpage where the infringement was found. This document was produced as BARBERA0037-0053 and was marked as Exhibit EE at Plaintiff's deposition. The printout is dated April 14, 2022, and was captured shortly after ███████ ████████████████████████. Plaintiff also produced ████████████████████████ ███████████████ (*Dkt. No.* 55-21, BARBERA02539), the timing of which is supportive of the date of actual discovery. |
| 2 | ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ███████████ | ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ███████████████ |

---

[1]    The page number corresponds to the page number of Defendant's Memorandum in Support (unredacted at *Dkt. No.* 54).

| | | |
|---|---|---|
| | | ████████████<br>████████████<br>████████████<br>████████████<br>████████████<br>████████████<br>████████████<br>████████████ |
| 2 | Plaintiff and his counsel have repeatedly mislead or outright lied to the Court including by: (3) ████████████<br>████████████<br>████████████<br>████████████<br>████████████<br>████████████<br>████████████<br>██████ | The undersigned stated that ████████████<br>████████████<br>████████████<br>████████████<br>████████████<br>████████████<br>████████████<br>████████████. |
| 3-4 | Plaintiff failed to produce ***any*** documents related to the investigation of Plaintiff's claims and filing of this action, despite that Plaintiff continues to rely on the discovery rule to toll the statute of limitations (emphasis by Defendant). | Plaintiff testified that he discovered the infringement while using Defendant's website as a customer in April 2022. In his initial production of documents sent to Defendant in October of 2024, Plaintiff produced a printout of the screengrab of the infringement, marked as BARBERA0037-0053 and was introduced as Exhibit EE at Plaintiff's deposition. The printout is dated April 14, 2022 and ██ ████████████<br>████████████<br>██████. On April 3, 2025, Plaintiff produced ████████████<br>██████, in response to Defendant's call for production thereof. (*Dkt. No. 55-21*, BARBERA02539). |
| 4 | Plaintiff produced no documents approving filing of this claim | Plaintiff produced BARBERA02540, ██ ████████████, |

| | ███████████████████ ███. | ███████████████████ ███████████. *Dkt. No.* 55-22. |
|---|---|---|
| 4 | Plaintiff produced no correspondence regarding the letter purportedly sent to Grailed on March 27, 2023 | The audit letter was dated March 21, 2023, was sent to Defendant on March 27, 2023, and was produced as BARBERA00329-331. Notably, despite claiming that Plaintiff failed to produce this document, it was marked as Exhibit FF at Plaintiff's deposition and a copy of same is annexed to the accompanying declaration of Jonthan M. Cader. |
| 4 | Plaintiff failed to produce attachments to any of the produced emails. | The attachments were produced as a part of BARBERA02427-2538 on March 27, 2025. |
| 4 | None of the images embedded in the produced emails are visible, *id.*, rendering them useless as this is a case about alleged infringement of an image. | The embedded images associated with the emails, making them "visible," were produced on March 27, 2025 as a part of BARBERA02427-2538. Thereafter, in response to Mr. Nietes' email dated March 27, 2025 stating that the supplemental production was "useless" to the extent that such production did not reference the "parent emails" to which they correspond, Plaintiff sent a letter dated April 3, 2025, providing all of the "cross-references" to the parent emails by Bates number. |
| 4 | Plaintiff produced no documents from before 2022, despite the requests dating back to January 1, 2018 due to the timing of the purported creation of the Photograph. | Plaintiff testified at his deposition as to the search terms that he used in searching for emails and other documents and testified that his searches may have been even before January 1, 2018. Plaintiff further testified that he produced everything he found. TR @ 315-318. Plaintiff could not produce documents that either do not exist or that he could not find after a diligent search. |
| 4 | Plaintiff failed to produce documents referenced within in the production itself including but not limited to ███████████ ████████████████ ████████████████████ ███████████████ | Plaintiff produced the ████████████ ████████████████████████ PLA02511-02517, as well as the ████████████ ████████████████████████████ at Bates PLA02530-02532 (as is acknowledged on p. 6 of the motion). With respect to the settlement agreements with ████████, |



| | | |
|---|---|---|
| | ███████████████ ████████████. | ███████████, Defendant has taken the position that such documents could not be produced without authorization from the countersigning parties. |
| 4 | Plaintiff unilaterally marked the entire production as "Confidential – Attorneys' Eyes Only" without following the procedures in the Protective Order. | The document production, consisting of 466 pages, was of communications between Plaintiff and the undersigned Firm, and were believed to have been appropriately marked in order for the production to be made by the deadline. Since nearly the entirety of this production has no relevancy or connection to this matter, it would be highly prejudicial to have these documents not be so designated. Regardless, this is not the vehicle for challenging a designation under the protective order *Dkt. No.* 51. |
| 5 | The initial disclosures were also substantively deficient in that Plaintiff failed to list any individuals who may have knowledge of the discovery of Plaintiff's alleged infringement at issue in this case; [including] ██████████ | Plaintiff was not asked at his deposition whether ██████████ may have knowledge of Plaintiff's discovery of the infringement (which he does not). He was only asked why J███ ████ was listed as a "contributor" with Backgrid. Plaintiff stated that ███ was not listed in the "crediting" of the Photograph, only as a "contributor" with Backgrid for purposes of ██████████████. TR@ 334:5-335:21. Insofar as Defendant did not specifically ask Plaintiff why he did not identify ██████ as a person with knowledge of the claims herein on his Initial or Supplemental disclosures, to clarify the record Plaintiff states that ██████ has no knowledge of Plaintiff's discovery of the Infringement or of this case. *See the accompanying Declaration of Robert Barbera, filed contemporaneously herewith.* |
| 5 | The initial disclosures even contain objective falsehoods regarding their service, certified by Plaintiff's counsel under penalty of perjury. *Compare id.* at 5 (Craig Sanders certifying he served on September 9, 2024. "… I caused to be served via electronic mail a copy of Plaintiff's Rule 26 Initial | On September 6, 2024, Mr. Sanders instructed his paralegal, Laura Costigan, to prepare Plaintiff's Initial Disclosures, Plaintiff's First Request for Production, Plaintiff's First Request for Admission and Plaintiff's First Request for Interrogatories, saved in Plaintiff's file, for service. Ms. Costigan prepared the certification and also the email serving these documents on Defendant. Unfortunately, Ms. |

| | | |
|---|---|---|
| | Disclosures on" Ms. Lackman's California office without reference to an email address) *with id.*, Ex. C… Even if this is simply a careless mistake, that would not alter the fact that Mr. Sanders thus certified objective falsehoods with an electronic signature. | Costigan served the documents on an older email address which was an artifact in Plaintiff's computer system and they were not received by Defendant. However, at the time the certification was created, despite not being authored by Mr. Sanders, it would not be an inaccurate statement that Mr. Sanders "caused" to be served the Rule 26 disclosures since his instruction to Ms. Costigan caused/triggered her email to be sent (or attempted to be sent) to Ms. Lackman. |
| 5 | The contention interrogatory answers were insufficient, as they amounted to nothing more than generalizations lacking any specificity. | While Plaintiff disagreed with Defendant's assertion that his responses to the contention interrogatories were insufficient, upon counsel's objection, rather than stand on ceremony, Plaintiff served a supplemental response to Defendant's contention interrogatories. The supplemental responses were sent prior to Plaintiff's deposition and were marked as Exhibit Y at Plaintiff's deposition, and inquiry was made as to those responses. |
| 6 | At his deposition, Plaintiff … confirmed documents existed that he did not produce notwithstanding the Court's Order (citing TR @ 228:14-229:22, 236:23-238:11, 301:18-302:25, 310:7-311:8) | Plaintiff testified as to his belief that he had produced documents responsive to the demand (TR 228:21-24) by producing a report of all of the sales of his images by ███████ from inception to the date of the demand. Defendant takes issue that the 12,000 or so sales were in a report rather than an individual sales format. In response to Defendant's call for production of individual sales reports for this Photograph, Plaintiff stated that he did not believe that he had access to such reports but would ask ███████ if such information existed and such a report could be obtained. Upon contacting ███████, the process to obtain such a report was explained to Plaintiff and he was able to generate same. The individual sales reports for the image at issue were subsequently produced. BARBERA2557-2558 (*Dkt. No.* 55-23); *see also* the accompanying Declaration of Robert Barbera |
| 7 | Plaintiff testified that he has no e- | Prior to the filing of this motion, Plaintiff |

| | | |
|---|---|---|
| | mails regarding his investigation of the claim (*id.* at 312:22-24) and yet verified that the approval of filing this suit came via e-mail (*id.* at 313:5-12). But that email was not in the production. | produced BARBERA02539-40 (which Defendant has filed as *Dkt. Nos.* 55-21, 22 and therefore, have been produced). Notably, these emails are not of the investigation of the claim, which Plaintiff testified do not exist, but nonetheless testified at length at his deposition as to how he discovered the infringement while scrolling through the Grailed website as a user. The emails produced at BARBERA02539-40 are ███████████████████ ██████████████████████. (*Dkt. Nos.* 55-21, 22). |
| 14 | Plaintiff admitted at his deposition that he did not search for documents in connection with the Court's Order of March 5, 2025. | Plaintiff was confused by Defendant's questions on this topic at his deposition, insofar as Defendant was asking about the system crashes referenced in his December declaration (*Dkt. No.* 41) at the same time Defendant was asking about any searches Plaintiff performed in March of this year. Plaintiff clearly did search for documents in March of this year insofar as he searched for and produced BARBERA02024-2346 in response to the Court's Order of March 5, 2025. *See also, Declaration of Robert Barbera filed herewith.* |
| 16 | Plaintiff did not recognize the operative Complaint in this action (citing to *Dkt. No.* 55-1 at 132:10-25). | Plaintiff testified only that he did not recall seeing a demand for jury trial. *Dkt. No.* 55-1 at 132:15-16. |

## **ARGUMENT**

The gravamen of Defendant's motion argues "that the limited discovery Plaintiff has provided reveals previous violations, including spoliation and failure to comply with the Court's previous Order of November 20, 2024. *Dkt. No.* 31. Defendant's argument in this respect should be disregarded because, other than its unfounded allegation of spoliation, it is largely a regurgitation of its previously filed motion, alleging that Plaintiff did not comply with the Court's Order of November 20, 2024 (*Dkt. Nos.* 34-36, *et seq.*) for which the Court entered an Order on March 5, 2025. *Dkt. No.* 49. As a result of that finding, Your Honor required Plaintiff to produce

additional documents, including those that otherwise might be protected by privilege or confidentiality agreements, and to sit for a deposition at his own cost and expense. The only question now before the Court is whether Plaintiff complied with the March 5 Order, which otherwise resolved Defendant's objections to the November 20 Order. Therefore, any of Defendant's continued references and arguments relating to the November 20 Order, cannot be relevant to the motion at-bar.

Respectfully, when the Court reviews the record as now developed, it should find that that Plaintiff complied with the March Order or, at the very least, diligently attempted to do so, and that no further sanctions are warranted. In this regard, it is noted that Plaintiff produced 422 pages of material within seven days of the Court's March 5 Order, as was required. The production consisted of attorney-client emails and/or other confidential documents, as the Court held that such objections had been waived. Upon receipt, Defendant took the position that the production was incomplete insofar as the attachments to the attorney-client emails were not visible. Plaintiff did not take the position that the production was insufficient as made, but, to assure compliance with the Court's Order, he reviewed the files and produced an additional 191 pages of materials which Defendant claimed were not visible. Following that production, Defendant still took the position that the production was still deficient because it did not include references to the "parent emails" to which the subsequently produced attachments related. Again, Plaintiff did not protest and provided a letter narrative, "cross-walking" each attachment to the parent email to respond to Defendant's claimed deficiency and assure compliance with the Court's Order.

Thereafter, Plaintiff sat for his deposition as Ordered (which lasted in excess of six hours). During that deposition, Defendant questioned Plaintiff if another specific document or report existed that had not been produced. Although Plaintiff stated that he was not in possession of the

requested document, and did not think that he had access to produce it in the requested format, he agreed to look to see if any such reports or documents could be obtained, and a post-deposition production was made in response to the calls for production made at the deposition.

In light of the foregoing, it is respectfully submitted the evidence shows that Plaintiff either complied with the Court's Order, or diligently attempted to do so, such that further sanctions are not warranted. Indeed, as the case law dictates, the standard is not one of perfection, but of good faith and reasonable diligence.

Finally, there is no factual basis for Defendant's contention that the Firm, or any of its individual attorneys misled the Court or lied to the Court with respect to its lack of affiliation with ████████████, or in any other regard, and for Defendant to make such an allegation in this manner should equally warrant the Court's strict scrutiny.

## I.    <u>STANDARD OF REVIEW</u>

"The civil contempt power is an extreme remedy and indeed a 'potent weapon,' and therefore should not be utilized 'where there is a fair ground of doubt as to the wrongfulness of the [accused party's] conduct.'" *S.E.C. v. Durante*, No. 01 CIV. 9056 DAB AJP, 2013 WL 6800226, at *5 (S.D.N.Y. Dec. 19, 2013), report and recommendation adopted, No. 01 CIV. 9056 DAB, 2014 WL 5041843 (S.D.N.Y. Sept. 25, 2014), aff'd, 641 F. App'x 73 (2d Cir. 2016). As such, the Second Circuit has held that "the power of a district court to impose contempt liability is carefully limited." *M. Harvey Rephen & Assocs., P.C. v. Chase Bank USA, N.A.*, 853 F. App'x 690, 692 (2d Cir. 2021) (citing *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) (quoting *E.E.O.C. v. Local 638*, 81 F.3d 1162, 1171 (2d Cir. 1996)). Continuing, the Second Circuit held that "[a] court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) **the party has**

*not diligently attempted to comply in a reasonable manner*." *M. Harvey Rephen & Assocs.,* 853 F. App'x at 692 (emphasis added).

## II.    DUPLICATIVE SANCTIONS SHOULD NOT BE GRANTED

In the first prong of its motion, Defendant argues that further sanctions are warranted by reason of Plaintiff's failure to comply with the Court's Order of November 20, 2024. *Dkt. No.* 31. Defendant's request for relief in this regard should be rejected insofar as Plaintiff's alleged failure to comply with the Court's November Order was the precise subject of Defendant's second motion for sanctions. At the hearing held on March 5, 2025, Your Honor agreed with Defendant and found that Plaintiff had not fully complied with the November Order and levied significant sanctions as a result thereof. To issue further sanctions on a matter on which the Court has considered and fully adjudicated would be inconsistent with the Second Circuit's general admonition that "an attorney [or party] should not be disciplined multiple times by the same court for the same misconduct…" *In re Jaffe*, 585 F.3d 118, 120 (2d Cir. 2009).

## III.    DISMISSAL SANCTIONS ARE NOT WARRANTED

In the next prong of its motion, Defendant argues that dismissal sanctions are warranted by reason of Plaintiff's purported failure to comply with the Court's Order of March 5, 2025, but, as narrated above, Plaintiff expended significant efforts to comply with that Order and believes he has fully complied.

The Court's March Order provided, *inter alia,* that: (i) Plaintiff is ordered to sit for an in-person deposition at his own expense and is precluded from introducing testimony from any witness other than himself; (ii) Plaintiff is also ordered to provide responses to Defendant's contention interrogatories and to serve his initial disclosures within seven days of this Order; (iii) Plaintiff is ordered to produce all documents responsive to Defendant's document requests. Any

documents withheld on the basis of privilege, a non-disclosure agreement, or any other waived objection must be produced within seven days of this Order. *Dkt. No.* 49 at p. 13.

In response to the Court's Order, on March 12, 2025 (within 7 days of the Court's Order), Plaintiff produced documents bearing Bates Nos. BARBERA01924-2346, together with his initial disclosures and responses to Defendant's contention interrogatories. Plaintiff subsequently sat for his in-person deposition lasting more than six hours. Notwithstanding the foregoing, Defendant avers that further sanctions are warranted, *inter alia,* because Plaintiff's initial disclosures were "false and incomplete," and that his responses to the contention interrogatories were insufficient, as they "amounted to nothing more than generalizations."

Defendant claims that the initial disclosures were incomplete because they purportedly omitted the names of persons with knowledge of the claims in this action and did not provide a sufficient damages calculation, to the extent that the disclosures stated that "Plaintiff has not yet obtained discovery of Defendant's financial, sales and other relevant records, Plaintiff cannot make a reasonable estimate of the damages sustained or infringing profits he may recover as a result of Defendant's actions." Defendant's argument in this regard does not acknowledge that the initial disclosures were produced as originally drafted in accordance with the Court's Order. Moreover, Defendant's downplays the fact that, when it advised the undersigned of these purported deficiencies, Plaintiff supplemented the initial disclosures and sent same to Defendant prior to Plaintiff's deposition. Accordingly, it is respectfully submitted that the Court should find no misconduct here, as Plaintiff served his initial disclosures as was required and supplemented them without objection upon request.

Defendant also argues that the initial disclosures contained "objective falsehoods" because they included a certificate of service indicating that the disclosures were duly served when, in fact,

they were not. As Defendant's motion tacitly acknowledges, this could just as easily be ascribed to a mistake. Moreover, the Court has already ruled on this issue in the context of Defendant's prior motion. The Court directed Plaintiff to (re)serve his initial disclosures within seven days of the March 5 Order, which he did. Accordingly, it is respectfully submitted that a duplicative punishment is not warranted.

Defendant next argues that Plaintiff did not comply with the Court's Order to the extent that he has not produced all responsive documents. In support, Defendant contends that "there is not a single document produced regarding Plaintiff's purported discovery" of the infringement and that he "surreptitiously deleted documents relevant to his claims." As is shown in the table *supra,* these arguments are contradicted by the record.

As to the first point, Plaintiff produced a printout of the screengrab of the infringement, marked as BARBERA0037-0053, and was introduced as Exhibit EE at Plaintiff's deposition. The printout is dated April 14, 2022, and was captured shortly after Plaintiff notified the Firm telephonically of his discovery of the Infringement on April 6, 2022. Plaintiff also produced ███

████████████████████████████████████████████████████

BARBERA02539. In addition, despite Defendant's representation to the contrary, Plaintiff produced the pre-suit "audit letter," dated March 21, 2023, (BARBERA00329-321) as a part of his production on December 5, 2024. Accordingly, Plaintiff has produced all of the documents that exist regarding the date of his discovery of the infringement.

Defendant's belief that it "strains credulity" that Plaintiff has no other documentation regarding his discovery of the infringement should be an insufficient basis to warrant the imposition of sanctions, let alone the most drastic sanction of dismissal. That is particularly so where, as here, Defendant questioned Plaintiff extensively about his discovery of the infringement

at his deposition, and Plaintiff testified credibly and consistently as to same, saying that he discovered the Infringement while scrolling through Grailed's website as a user, and further testified that he believed to have advised his attorneys of this Infringement by phone, rather than by email. This is further borne out by the other documentation produced in this case, ███████ ████████████████████████████████████████████████████████████████████ ████████. These facts, taken together, plausibly explain why the unspecified documents which Defendant believes should exist do not. Stated otherwise, Defendant's position essentially requires Plaintiff to prove the negative (i.e. a document that does not exist does not exist). Plaintiff believes the record here speaks for itself in that regard and Defendant's unsubstantiated belief otherwise cannot be the basis for a sanction.

Defendant's contention that Plaintiff has deleted documents relevant to this case is also contradicted by the record. This argument appears to be based on Defendant's belief that Plaintiff used an "auto-delete" function or, that it is "implausible" that other documents do not exist. As to the first point, Plaintiff testified at his deposition that he does not use an "auto-delete" that may have swept up documents randomly. *Dkt. No.* 51 at 221:22-25. Instead, Plaintiff testified that he reviews emails manually to determine which are not needed and may be discarded. Further, when asked specifically if he deleted any documents relevant to his claims in this case, he said he did not. *Id.* at 216:24-217:4. Plaintiff stated that the only things he deleted were random notes he may have "jotted" to himself. In other words, there is no support for Defendant's contention that Plaintiff engaged in the "wholesale destruction of documents," let alone any documents that would be relevant to this case.

Finally, Defendant's contention that sanctions are warranted because Plaintiff purportedly did not search for documents in March of this year in response to the Court's Order is plainly

contradicted by the record. As noted above, Plaintiff searched for and produced BARBERA01924-2346 within seven days of the Court's Order, as was required. These documents could not have been produced if Plaintiff had not searched for and collated them. To the extent Defendant relies on Plaintiff's deposition testimony for this contention, it cannot refute that Plaintiff made the foregoing production. Further, Plaintiff's declaration accompanying this submission explains why he was confused by the manner in which Defendant asked these questions at his deposition.

## IV.    PLAINTIFF'S OWNERSHIP OF THE PHOTOGRAPH IS NOT IN QUESTION

In the next prong of its motion, Defendant argues that Plaintiff's ownership of the Photograph is in question because "██████████ appears as a contributor to the Photograph in Plaintiff's own records [but] because of Plaintiff's practice of deleting relevant information, Grailed cannot explore the issue of ownership." Defendant's argument in this regard is legally and factually erroneous.

Defendant's argument is legally erroneous insofar as it is well-settled that a certificate of copyright registration is prima facie evidence that the copyright is valid. *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997) (citations omitted). Here, Plaintiff has produced both the copyright application and the resulting certificate registration. The application identifies Plaintiff (and only Plaintiff) as the claimant. The certificate of registration similarly identifies Plaintiff as the only registrant. Accordingly, Plaintiff's ownership of the Photograph is not in question.

Defendant's argument is factually erroneous to the extent that Defendant similarly questioned Plaintiff about this issue at length during his deposition. Plaintiff explained that ██████ is his assistant and that he "codes" his assistant's name into images he uploads to ██████ for purely administrative purposes. More specifically, Plaintiff testified that by coding his assistant's name into the photographs, his assistant will receive a portion of the commissions

earned directly from ████, eliminating the need for Plaintiff to handle what would otherwise be a payroll obligation himself. Moreover, in response to further questioning, Plaintiff testified that identifying ████████ as a "contributor" with Backgrid for purposes of facilitating payment is not the same as crediting him as a "creator," such that he would have any interest in the copyright. As such, Defendant cannot plausibly contend that there are any factual or legal questions with respect to Plaintiff's ownership of the Photograph which have not been answered.

## V.    **PLAINTIFF SHOULD NOT BE HELD IN CONTEMPT**

In the next prong of its motion, Defendant argues that Plaintiff should be held in contempt because he admitted that "a number of documents do exist that he did not produce." *Dkt. No.* 54 (citing *Dkt. No.* 51-1 at 228:14-229:22, 236:23-238:11, 301:18-302:25, 310:7-311:8). This argument draws no support from the record as is set forth in the table above, or, by a review of the more than 2800 pages produced to date. Notwithstanding the foregoing, for the sake of completeness, Plaintiff will further respond to the particular averments made by Defendant in support, with citations to the record.

The first documents referenced (at 228:14-229:22) are the individual sales records for the Photograph from Backgrid. Plaintiff first testified that he thought the global sales reports were responsive to Defendant's demand. When counsel qualified the precise type of report he was looking for, Plaintiff said "I'm sure Backgrid has that information." Defendant thereafter called for the production of any such documents. Although Plaintiff believed that the sales reports he produced in response to the Court's November Order, showing his entire sales history from the beginning of his relationship with ████ to the date of the request (consisting of more than 12,000 individual sales) was fully responsive to Defendant's request, he agreed to reach out to ████ to find out if the granular report requested by Defendant could be produced. As is set

forth in the accompanying declaration, Plaintiff contacted ███████ to find out if such information existed and, if so, how such a report could be generated. Once the process was explained to Plaintiff, he was able to obtain the requested reports related to the Photograph at issue in this case and they have been produced in response to that demand. BARBERA02557-8.

Notably, these are not Plaintiff's documents but rather documents owned, possessed and controlled by ████████. While Plaintiff does have limited access to these documents through ████████ portal, he does not have control to produce them in any manner other than that which is provided by the user interface. In this regard, as is set forth in the accompanying declaration of Plaintiff, were he to attempt to produce all 12,000 sales reports of licenses sold by Backgrid to images not involved in this case individually, using a roughly 5 minute per report metric, it would take roughly 1,000 working hours to produce all of these reports, none of which is likely relevant and/or admissible in this matter.

The next documents referenced (at 236:23-238:11) are similar to the above, to the extent that counsel asked if there were documents that would show the commissions paid to Plaintiff for the individual sales of the Photograph. Plaintiff reiterated his belief that the information requested was in the production already made but stated that he would find out if he could get such information from ████████ This information is contained in BARBERA02557-8 and has been produced. This is also the same request made at 310:7-311:8, which was produced in response to the call for production.

The next documents requested were in response to Plaintiff's stated belief that a website's revenues are based, at least in part, on its volume of traffic and page views. Plaintiff stated "that's how the Internet works." Defendant then called for the identification of the sources Plaintiff consulted to support his belief in that regard. That a responsive document does not exist in response

17

to Defendant's demand does not equate to discovery misconduct, little less clear and convincing evidence of non-compliance.

The next documents requested were ████████████████████████████████████ ██████████████.'' Despite making this demand, Defendant has also taken the position that producing the agreements without consent of the countersigning parties would violate the Court's protective Order. In other words, it is Defendant's position that Plaintiff would be in violation of the Court's Order by either producing these documents or by not producing these documents.

Finally, Defendant argues that the document production is incomplete because Plaintiff has not produced any settlement agreements that pre-date 2022, which Defendant believes should be in the possession of ████████████████████████████████████ in that year. According to Defendant, ████████████████████████████████████ ████████████████, they must be in the possession of Sanders Law Group, according to the N.Y. State Bar Ass'n Comm. On Prof'l Ethics, Op. 1192 (June 9, 2020) which, according to Defendant, requires an attorney to maintain a client's closed file indefinitely.

Defendant's interpretation of this opinion statement is overly broad and not supported by a plain reading of same. More specifically, the opening statement of the opinion states that "[w]ith certain important exceptions, a lawyer has no ethical duty to retain closed client files (or other documents held by the lawyer owned by third parties) for an indefinite period when neither the client nor the third party requests their return." Instead, "a lawyer is free to discard such files and records consistent with common sense and the prudential exercise of professional judgment."

Further, as has been previously explained to Defendant more than once, Sanders Law Group did not ████████████████████████████, did not acquire from the ████████████████ any of its closed files, nor did the Firm purchase the ████████████████ computer equipment

and/or email servers and therefore does not have ownership, possession and/or control of the ████████ historical emails or case files. In other words, Plaintiff (or his current counsel) does not have any settlement agreements that pre-date 2022 responsive to this request and therefore it is respectfully submitted that the failure to produce documents that are neither in the possession of Plaintiff or his counsel is not akin to the withholding of documents and cannot amount to sanctionable misconduct.

## VI.   NEITHER PLAINTIFF NOR THE FIRM MADE MISREPRESENTATIONS TO THE COURT

In the next prong of its motion, Defendant avers that Plaintiff and his counsel should be sanction for making "at least six" misrepresentations to the Court. It is respectfully submitted that there has been no such misconduct.

*First,* Defendant repeats its allegation that the date of discovery of the Infringement was either "████████████████████████████████████ ████████████." As this issue has been discussed throughout, the arguments need not be repeated here, as they have been factually addressed and have been shown to have no support in the record.

*Second,* Defendant argues that our explanation for why Plaintiff's initial discovery responses were served one day late was "incorrect and frivolous." In support, Defendant cites to ████████████████████████████████████████████████ ████████████." The explanation previously provided to the Court was consistent with this statement. The Court found that the interpretation of how time is to be calculated under Rule 6 to be erroneous and incorrect, but the representation was not a misrepresentation to the Court. It was merely an incorrect construction of the rule. It is respectfully submitted that there is a significant difference between a misinterpretation and a misrepresentation; the former being innocent and the latter not. Notwithstanding the foregoing, the Court has already imposed

punishment for that misinterpretation, and it is respectfully submitted that no further punishment is warranted.

      *Third*, Defendant reiterates its argument that Sanders Law Group has "no association" with ██████████████ or ██████████████████ was purportedly a false representation to this Court. In support, Defendant again refences ███████████████████████████████ ████████████████████████." To this end, Defendant avers that the Firm's statement that "████████████████████████████████████████████████████" is similarly false. This is not so. Taken in reverse order, ██████████████ was never an associate or employee of the Firm in any capacity. As to ████████████████, an associate of the Firm is not a "member" of the Firm. Therefore, there was no misrepresentation in this regard. Finally, as set forth above, the "███████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████. Again, there was no misrepresentation to the Court in this regard.

      *Fourth and Fifth*, Defendant argues that Plaintiff's explanation as to why the November document production was late (the time needed to compile the production by itself, which was amplified by technical difficulties encountered in trying to generate the requisite reports) was false. Defendant bases this argument on the allegation that ███████████████████████████████ ███████████████████████████████████. Defendant's reliance on ██████ ██████ lacks context. More specifically, Plaintiff and counsel spent countless hours in the preceding week-plus discussing ████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████. Instead, it is respectfully submitted that the purpose ████████ was to facilitate Plaintiff's collection of any remaining documents and hasten their production. In other words, to comply with the Court's Order.

*Sixth*, Defendant argues that the Declarations signed by the undersigned and Plaintiff which certified that "Plaintiff does not have any other documents responsive to Defendant's requests" (*Dkt. Nos.* 41-42) were false, insofar as Plaintiff has subsequently produced additional documents in response to Defendant's demands. Defendant's argument in this regard should be rejected because it does not provide the proper context for the supplemental productions. More specifically, at the time that the subject Declarations were submitted, Plaintiff had produced all non-privileged documents in his possession that were responsive to Defendant's requests. It was not until the hearing held on March 5, and the Order issued thereupon, that the Court Ordered Plaintiff to produce any documents withheld on the basis of privilege or confidentiality including, but not limited to, the items identified on Plaintiff's privilege log. This operated to substantively amend the Court's prior Order which granted Defendant's motion to compel (*Dkt. No.* 31), to the extent that the November Order did not find that Plaintiff had waived privilege or must otherwise produce documents withheld on the basis of privilege. Accordingly, the statements were not false when made, nor are they now. The supplemental productions were either in response to the Court's March Order, in response to Defendant's notification that certain documents were "not visible," or, in response to calls for production made at Plaintiff's deposition. To this end, Plaintiff fails to understand how his producing documents responsive to the Court's Order and not previously required could form the basis of Defendant's allegation that his compliance violated the Court's

Order. The same is true with respect to any further production made by Plaintiff thereafter, Plaintiff's continued production in response to Defendant's subsequent demands was done in good faith and to respond to any claimed deficiencies, even if he did not believe the productions to be deficient.

## VII.    THERE IS NO "PATTERN OF MISCONDUCT"

In the final prong of its motion, Defendant argues that further sanctions are warranted because Sanders Law Group purportedly "has a pattern of misconduct in many other cases." This argument is entirely without merit insofar as it finds its roots in Defendant's erroneous belief that Sanders Law Group "███████████████████████." To that end, Defendant cites to Judge Furman's decision in *Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368 (JMF), 2020 WL 3483661, at *1 (S.D.N.Y. June 26, 2020), aff'd in part sub nom. *Liebowitz v. Bandshell Artist Mgmt.*, 858 F. App'x 457 (2d Cir. 2021), and aff'd sub nom. *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021).

Defendant's reliance on *Usherson* is of no moment for at least two reasons. First, the findings in *Usherson* were specific to Richard Liebowitz himself, who Judge Furman found had earned the "dubious distinction of becoming one of the most frequently sanctioned lawyers, if not the most frequently sanctioned lawyer, in the District and elsewhere." As stated *supra*, ███████ ███████ was never a member, associate or employee of Sanders Law Group and the firms did not ███████." Therefore, *Usherson*, and any findings made by Judge Furman against Richard Liebowitz or the Liebowitz Law Firm, are of no moment to the case-at-bar.

In furtherance of its efforts to prove a "pattern of misconduct," Defendant avers that Sanders Law Group purportedly has "a similar history of being sanctioned." *Dkt. No.* 54 at p. 19 (citing *BWP Media USA Inc. v. Urbanity, LLC*, 696 F. App'x 795, 797 (9th Cir. 2017); *Viral DRM,*

*LLC v. Rhino Towing Servs.*, Inc., 2024 WL 4495482, at *2 (C.D. Cal. Oct. 15, 2024); *Ward v. Credit Control Servs., Inc.*, 2022 WL 2048707, at *4 (E.D. Cal. June 7, 2022); *Bee Creek Photography v. Lonestar Cap. Holdings LLC*, 2024 WL 3158165, at *1 (W.D. Tex. June 6, 2024) *adopted*, 2024 WL 3152387 (W.D. Tex. June 24, 2024); *Bee Creek Photography v. Fronks LLC*, 2024 WL 3669866, at *1 n.2 (W.D. Tex. Aug. 2, 2024), *adopted*, 2024 WL 3898110 (W.D. Tex. Aug. 20, 2024), *adopted*, 2024 WL 3898110 (W.D. Tex. Aug. 20, 2024); *BWP Media USA, Inc. v. Internet Brands, Inc.*, 2016 WL 7626445, at *2 (C.D. Cal. Oct. 13, 2016).  Defendant's argument is unavailing.

Defendant's reliance on the *BWP Media* cases is misplaced insofar as Sanders Law Group was not counsel of record in those cases. Indeed, Sanders Law Group did not exist in 2016 or 2017. Regardless, substantively, these cases represent situations in which the Court made adverse rulings, but not ones which would support a "history of sanctionable conduct."  For example, in *BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*, No. C13-1975-MAT, 2015 WL 347197 (W.D. Wash. Jan. 23, 2015)[2], the Court precluded the plaintiff from using full-sized printouts of screengrabs which had been previously produced only in thumbnail form. In *BWP Media USA, Inc. v. Internet Brands, Inc.*, 2016 WL 7626445 (C.D. Cal. Oct. 13, 2016), the Court denied the plaintiff's motion for summary judgment for failure to specifically comply with the local rules' meet and confer requirement; the meeting was held three weeks prior to the filing of the motion, instead of within a week of the filing, and was described as focusing on settlement, rather than on the motion itself. Neither of these provide support for recidivistic misconduct.

Defendant's citation to the *Bee Creek* cases is similarly unavailing, insofar as the only

---

[2]     This is the District Court's caption which was cited as *BWP Media USA Inc. v. Urbanity, LLC* in the Circuit decision cited by Defendant.

"violations" there were that the Firm had filed a notice of motion and separate brief in support, rather than an incorporated motion and brief. Notably, the substantive relief sought in those cases was granted and no relief was issued against the Firm.

In *Viral DRM*, the Court dismissed a case after the plaintiff's motion for default judgment had been withdrawn prior to the noting date. In *Ward,* the Court precluded the plaintiff from relying on a document in connection with her motion for summary judgment that she did not obtain from a third-party until after the close of discovery. With that document precluded, the Court denied summary judgment to both parties and referred the case to ADR. Once again, neither of these decisions claims or evinces a "pattern of misconduct" as Defendant would ask this Court to find.

More importantly, while the Firm endeavors to at all times be perfect in how it presents its client's cases to any Court, citing to five cases over the thousands filed where a Court held that the Firm erred in some non-sanctionable regard is a far cry from a pattern of misconduct warranting the blanket condemnation that Defendant contends appropriate. Should it be, it is doubtful that any law firm or attorney could withstand that level of scrutiny.

## **CONCLUSION**

As Your Honor held in ruling on Defendant's prior motions for sanctions, while a District Court has "wide discretion in sanctioning litigants appearing before it … dismissal with prejudice is a harsh remedy to be used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault' by the non-complaint litigant." *Dkt. No.* 49 at p. 10 (quoting *Agiwal v. Mid Island Mortg. Corp*., 555 F.3d 298, 302 (2d Cir. 2009) (quoting *Bobal v. Rensselaer Polytechnic Inst*., 916 F.2d 759, 764 (2d Cir. 1990)). Here, it is respectfully submitted that the Court should find that Plaintiff either fully complied with his obligations or substantially complied with same but nonetheless diligently attempted to comply in a reasonable manner, such that further

sanctions are not warranted.

The Firm similarly asks the Court to find that it did not engage in any of the misconduct alleged and that any sanctions already issued are sufficient.

Dated: April 15, 2025

**SANDERS LAW GROUP**

By: */s/ Jonathan M. Cader*
Jonahan M. Cader, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, New York 11553
Email: jcader@sanderslaw.group
Tel: 516-203-7600

*Attorneys for Plaintiff*