UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT BARBERA,

                Plaintiff,

     v.

GRAILED, LLC,

                Defendant.

Case No. 24-CV-3535 (LJL)

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
# THIRD MOTION FOR SANCTIONS

Eleanor M. Lackman (eml@msk.com)
Andrew Nietes (afn@msk.com)
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Defendant Grailed, LLC*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................... 1

FACTUAL BACKGROUND & PROCEDURAL HISTORY ...................................................... 2

ARGUMENT ...................................................... 8

I.      PLAINTIFF'S FURTHER CONDUCT EVIDENCES DISCOVERY VIOLATIONS WARRANTING DISPOSITIVE SANCTIONS ...................................................... 8

II.      PLAINTIFF SHOULD BE HELD IN CONTEMPT ...................................................... 12

III.      PLAINTIFF AND HIS ATTORNEYS SHOULD BE SANCTIONED FOR MAKING MISREPRESENTATIONS TO THE COURT ...................................................... 15

CONCLUSION ...................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Bee Creek Photography v. Fronks LLC*,
  2024 WL 3669866 (W.D. Tex. Aug. 2, 2024), *adopted*, 2024 WL 3898110 (W.D.
  Tex. Aug. 20, 2024), *adopted*, 2024 WL 3898110 (W.D. Tex. Aug. 20, 2024).....................19

*Bee Creek Photography v. Lonestar Cap. Holdings LLC*,
  2024 WL 3158165 (W.D. Tex. June 6, 2024), *adopted*, 2024 WL 3152387 (W.D.
  Tex. June 24, 2024).........................................................................................................19

*Beers v. Gen. Motors Corp.*,
  1999 WL 325378 (N.D.N.Y. May 17, 1999).........................................................................11

*BWP Media USA, Inc. v. Internet Brands, Inc.*,
  2016 WL 7626445 (C.D. Cal. Oct. 13, 2016).......................................................................19

*BWP Media USA Inc. v. Urbanity, LLC*,
  696 F. App'x 795 (9th Cir. 2017) .........................................................................................18

*Cordius Tr. v. Kummerfeld Assocs., Inc.*,
  658 F. Supp. 2d 512 (S.D.N.Y. 2009)...................................................................................12

*Exp. Dev. Canada v. E. Coast Power & Gas, LLC*,
  2024 WL 4566146, (S.D.N.Y. Oct. 24, 2024) .....................................................................19

*Handwerker v. AT&T Corp.*,
  211 F.R.D. 203, 208 (S.D.N.Y. 2002) ...................................................................................8

*In re NTL, Inc. Sec. Litig.*,
  244 F.R.D. 179 (S.D.N.Y. 2007), *aff'd sub nom. Gordon Partners v. Blumenthal*,
  2007 WL 1518632 (S.D.N.Y. May 17, 2007) .....................................................................12

*M. Harvey Rephen & Assocs., P.C. v. Chase Bank USA, N.A.*,
  853 F. App'x 690 (2d Cir. 2021) .........................................................................................14

*Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*,
  212 F.R.D. 178 (S.D.N.Y. 2003), *adhered to on reconsideration*, 2004 WL 1943099
  (S.D.N.Y. Aug. 27, 2004) ...............................................................................................9, 11

*Psihoyos v. John Wiley & Sons, Inc.*,
  748 F.3d 120 (2d Cir. 2014)...................................................................................................10

*Rodriguez v. New Generation Hardware Store Corp.*,
  2024 WL 1406953 (S.D.N.Y. Apr. 2, 2024)....................................................................14, 15

## TABLE OF AUTHORITIES
<u>(continued)</u>

**<u>Page(s)</u>**

*Usherson v. Bandshell Artist Mgmt.*,
  2020 WL 3483661 (S.D.N.Y. June 26, 2020), *aff'd in part sub nom. Liebowitz v.*
  *Bandshell Artist Mgmt.*, 858 F. App'x 457 (2d Cir. 2021), and *aff'd sub nom.*
  *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021)..........................11, 15, 18, 19

*Viral DRM, LLC v. Rhino Towing Servs., Inc.*,
  2024 WL 4495482 (C.D. Cal. Oct. 15, 2024).........................................................................18

*Ward v. Credit Control Servs., Inc.*,
  2022 WL 2048707 (E.D. Cal. June 7, 2022) ..........................................................................19

*Wozniak v. Warner Bros. Ent. Inc.*,
  726 F. Supp. 3d 213 (S.D.N.Y. 2024)....................................................................................10

### STATUTES
17 U.S.C. § 507(b) ........................................................................................................................9

### OTHER AUTHORITIES
Federal Rule of Civil Procedure
  11...........................................................................................................................................16
  11(c)(2) .................................................................................................................................16
  16.............................................................................................................................................8
  16(f).............................................................................................................................2, 8, 19
  37................................................................................................................................2, 8, 19
  37(e)(2)(A)-(B) .....................................................................................................................12

## PRELIMINARY STATEMENT

Plaintiff Robert Barbera ("Plaintiff") and his counsel's continued misconduct—despite having already been sanctioned—brazenly violates this Court's express orders and the obligations mandated by the Federal Rules and ethical rules. The Court issued a clear order that Plaintiff was to produce, along with initial disclosures and contention interrogatory answers, ***all*** documents responsive to Defendant Grailed, LLC's ("Grailed") discovery requests within 7 days. He did not. He still has not. If such documents do not exist, it is because Plaintiff admitted at his (previously unilaterally skipped) deposition that he has surreptitiously deleted documents relevant to his claims:

> Q.     Are there any notes that you have deleted in relation to this claim?
>
> A.     Any notes that I wrote down while I was on a phone call are not relevant to this. Those are things I jot, and I deleted that right after that. That's not a document pertaining to this.
>
> Q.     I understand that you don't think it's relevant. I am asking whether or not you deleted it. Is the answer yes?
>
> A.     Yes. ***They're all deleted***.

Declaration of A. Nietes ("Nietes Decl.") ¶ 2, Ex. A ("Barbera Dep.") at 217:7-17 (emphasis added). Indeed, Plaintiff testified that, despite filing between 70-100 lawsuits in the last five years, his general practice is to completely purge all emails, text messages, and documents within a year—regardless of whether a federal lawsuit suit has been filed in relation to such documents. Thus, the previously withheld discovery reveals further prior violations including this spoliation of evidence, some of which is directly related to the heart of Grailed's meritorious defenses.

Perhaps worse, the documents produced in response to the Court's Order also reveal that Plaintiff and his counsel have repeatedly mislead or outright lied to the Court including by: (1) pleading a date of discovery for the alleged infringement in the Complaint that is likely fabricated; (2) disclaiming an affiliation between Sanders Law Group and Plaintiff's prior counsel, the Liebowitz Law Firm, despite documents referring to the two firms as "merged"; and (3) misstating to the Court the reasons why discovery responses and productions had been late on multiple occasions, including twice arguing Sanders Law Group had miscalculated the response deadline when emails reveal that counsel knew precisely the correct due date and failed to serve the responses and productions anyway.

This conduct must stop. Though it has been stated previously, now more than ever: enough is enough. Grailed respectfully requests that the Court sanction Plaintiff for his continued discovery violations and misconduct by dismissing Plaintiff's claims pursuant to Fed. R. Civ. P. 16(f) and 37 *et seq.*, and pursuant to the same along with the Court's own inherent authority, issue sanctions finding Plaintiff in contempt, ordering that he and his attorneys be held jointly and severally liable for Grailed's attorneys' fees sought in attempting to procure compliance with the Court's Order (including this motion), and granting any other relief the Court deems just and proper.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

As the Court is aware, Plaintiff initiated this action initially on May 8, 2024 (ECF No. 1), alleging that a photograph of Jonah Hill (the "Photograph") he purportedly captured in January 2019 was infringed by Grailed, when it was posted on an editorial style news blog on Grailed's website in November 2020. *See* ECF No. 10 ¶¶ 2, 14, 22. Plaintiff alleges he discovered the purported infringement on April 6, 2022. *Id.* ¶ 25. Following two sanctions motions by Grailed, on March 5, 2025, the Court issued a Memorandum and Order stating:

- "Plaintiff is ordered to produce all documents responsive to Defendant's document requests. Any documents withheld on the basis of privilege, a non-disclosure agreement, or any other waived objection must be produced within seven days of this Order."

- "Plaintiff is also ordered to provide responses to Defendant's contention interrogatories and to serve his initial disclosures within seven days of this Order. Because Plaintiff failed to provide timely objections, he has waived any objection to the interrogatories."

- "Given Plaintiff's continued failure to serve initial disclosures and to attend his own deposition, Plaintiff is ordered to sit for an in-person deposition at his own expense and is precluded from introducing testimony from any witness other than himself."

ECF No. 49 at 13 (the "Order") (citations omitted). On March 12, 2025, Plaintiff served counsel for Grailed a document production, his initial disclosures, and answers to the contention interrogatories. Nietes Decl. ¶ 3. Nonetheless, each was patently deficient on its face. Grailed made Plaintiff initially aware of these deficiencies in an email to his counsel on March 14, 2025. *Id.* ¶ 4. Counsel for the parties discussed these matters on March 18, 2025 via Zoom, during which time Plaintiff's counsel referred to the deficiencies as "objections" and the call as a "meet and confer" conference. *Id.* ¶ 5. Grailed's counsel made clear that the deficiencies were not "objections" but violations of the Court's discovery orders and, to the extent Plaintiff intended to produce documents in response to the deficiencies, such documents would need to be produced prior to Plaintiff's deposition noticed for March 26, 2025. *Id.* Having received no subsequent communication on these issues, counsel for Grailed sent a letter to Plaintiff's counsel on March 23, 2025, further detailing the deficiencies. *Id.* ¶ 7, Ex. D. Grailed's letter of March 23 asked Plaintiff to identify which of these deficiencies, if any, were addressed "in documents ***produced to date*[.]**" *Id.* (emphasis in original). Plaintiff has not done so.

The deficiencies in the March 12 document production included that:

- Plaintiff failed to produce ***any*** documents related to the investigation of Plaintiff's

3

claims and filing of this action, despite that Plaintiff continues to rely on the

discovery rule to toll the statute of limitations, *see id.* ¶ 6;

- Plaintiff produced no documents approving filing of this claim <mark>despite him doing so in other cases</mark>, *id.*, *see also id.* ¶ 11, Ex. H;

- Plaintiff produced no correspondence regarding the letter purportedly sent to Grailed on March 27, 2023, *id.* ¶ 6;

- Plaintiff failed to produce attachments to any of the produced emails, *id.*;

- None of the images embedded in the produced emails are visible, *id.*, rendering them useless as this is a case about alleged infringement of an image;

- Plaintiff produced no documents from before 2022, despite the requests dating back to January 1, 2018 due to the timing of the purported creation of the Photograph, *id.*;

- Plaintiff failed to produce documents referenced within in the production itself including but not limited to <mark>a contingency agreement with Sanders Law Group, an engagement agreement with an Israeli law firm, and settlement agreements with Andy Cohen, Grandari, and Milk Snob</mark>, *id., see also id.* ¶¶ 12-16, Exs. I-M ; and

- Plaintiff unilaterally marked the entire production as "Confidential – Attorneys' Eyes Only"[1] without following the procedures in the Protective Order, which the parties agreed to and the Court entered, *id.* ¶ 6; these "AEO" documents included <mark>ordinary emails specifically stating they are "automated, weekly reminder" emails and other form emails which merely required Plaintiff to click a button</mark>, *id.* Exs.

---

[1] *See* ECF No. 51 ¶ 9 ("Any Party who requests additional limits on disclosure (such as 'attorneys' eyes only' in extraordinary circumstances) may at any time prior to the trial of this action serve upon counsel for the receiving Party a written notice stating with particularity the grounds for the request").

H, N, and Grailed must now file them under seal nonetheless.

The initial disclosures were also substantively deficient in that Plaintiff failed to list any individuals who may have knowledge of the discovery of Plaintiff's alleged infringement at issue in this case; he likewise failed to provide contact information for Jawad Elatab, despite him appearing throughout Plaintiff's own production. *See id.* ¶ 3, Ex. B at 3. The computation of damages further stated, "Plaintiff cannot make a reasonable estimate of the damages sustained or infringing profits he may recover as a result of Defendant's actions" because Plaintiff has not obtained discovery from Grailed, when discovery closed in this matter over three months ago. *Id.* at 4. The problems were so pervasive that the initial disclosures even contain objective falsehoods regarding their service, certified by Plaintiff's counsel under penalty of perjury. *Compare id.* at 5 (Craig Sanders certifying he served on September 9, 2024. "… I caused to be served via electronic mail a copy of Plaintiff's Rule 26 Initial Disclosures on" Ms. Lackman's California office without reference to an email address) *with id.*, Ex. C (email showing Jonathan Cader served the initial disclosures on March 12, 2025 at email addresses omitted from the certificate of service). Even if this is simply a careless mistake, that would not alter the fact that Mr. Sanders thus certified objective falsehoods with an electronic signature. These are the very initial disclosures which Plaintiff's counsel argued at length at oral argument had been served, when they were not. Finally, the contention interrogatory answers were also insufficient, as they amounted to nothing more than generalizations lacking any specificity. *See id.* ¶ 9, Ex. F. Indeed, throughout the answers, Plaintiff states "upon information and belief" without actually identifying ***what*** information he is referring to or the source of such information and belief. *Id.*

Plaintiff's counsel called to reschedule the deposition due to personal obligations that arose on March 26, and Grailed consented to reschedule the deposition for March 28. *Id.* ¶ 8.

Plaintiff served updated contention interrogatory answers, which included slightly more detail but still amounted to mere generalizations, and made a further production of only the attachments to the produced emails on March 27 at 4:52 p.m., purportedly in response to Grailed's deficiency letter. *Id.* ¶ 9 & Exs. E-F. While this production included the above-referenced contingency agreement and engagement of the Israeli Law Firm as well as a letter in which Plaintiff approved filing of the instant action, it did not include the settlements with Andy Cohen, Grandari, or Milk Snob. *Id.* Plaintiff addressed none of the other concerns raised in Grailed's letter of March 23, 2025. *Id.*

At his deposition, Plaintiff could not explain many of the interrogatory answers he swore to as true under penalty of perjury, including those served the day before, claiming lack of memory. *See, e.g.*, Barbera Dep. 299:19-300:6. Moreover, Plaintiff not only confirmed documents existed that he did not produce notwithstanding the Court's Order, *see, e.g.*, *id.* at 228:14-229:22, 236:23-238:11, 301:18-302:25, 310:7-311:8, but also that the reason for his nonproduction of other documents is because he failed to preserve documents relevant to his claims. *See id.* 217:7-17 (Plaintiff testifying regarding notes he took in relation to this claim: "They're all deleted."). And while Plaintiff claimed in response to this revelation that there are no documents related to this claim that have been deleted, *id.* at 216:24-217:4, his testimony and the documents belie that notion. He testified that for his "whole life" (including in 2022 when the purported discovery of the infringement by him and/or his counsel occurred), he would "always purge [his] inbox, [his] e-mails, [his] text messages, always delete everything" and would only keep documents "within the year" regardless of the pendency of a claim, ***including for this claim***. *Id.* at 212:10-214:15; 216:13-23. He did not understand the relevancy of the filing of a federal lawsuit on his preservation obligations, despite having admittedly filed 70-100 lawsuits

in the last five years (*id.* at 31:22-24) and confirmed this would not change his practice to delete electronically stored information. *Id.* at 216:13-23. Indeed, Plaintiff further testified that he specifically deleted notes relevant to this case and that his lawyer never informed him of his obligation to preserve documents relevant to the case. *Id.* at 223:419. Plaintiff testified that he has no e-mails regarding his investigation of the claim (*id.* at 312:22-24) and yet verified that the approval of filing this suit came via e-mail (*id.* at 313:5-12). But that email was not in the production. And finally, Plaintiff testified that he would send a screenshot of alleged infringements to his attorneys, after which he would "delet[e] the screenshot that I sent to my lawyer because they already saved it on their files. That's what I'm talking about deleting." *Id.* 220:9-221:13.

On April 2, 2025, counsel for Grailed wrote to Plaintiff's counsel regarding its intent to move for sanctions on Friday April 3, 2025 including for the reasons stated in Grailed's March 23, 2025 letter and based on the testimony in Plaintiff's deposition, requesting a meet and confer on an anticipated letter-motion to vacate the current summary judgment deadlines pending the same. Nietes Decl. ¶ 22. Despite having notice of the deficiencies as early as March 14, 2025 and further deficiencies on March 23, 2025, Plaintiff finally responded on Thursday April 3 with yet another document production bearing Bates stamps BARBERA02539-2747, a response letter, and supplemental initial disclosures (among other documents). *Id.*, Exs. S-T. Plaintiff's counsel's letter did not identify where in the documents produced to date the deficiencies could be accounted for as requested. *See id.*, Ex. T. Moreover, the document production only further reveals the scope of Plaintiff's misconduct. Two of the emails (*id.*, Exs. U-V) ==are directly relevant to this matter== and should have been produced on March 12, 2025 in accordance with the Court's Order and ***before*** Plaintiff's deposition. Worse still, ==Plaintiff has now produced non-==

privileged individual sales reports for the Photograph at issue here (*id.*, ¶ 25, Ex. W) and further sales reports from another entity (*id.* ¶ 25), that are responsive to document requests served in September *which the Court ordered Plaintiff to produce in November*. *See* ECF No. 31.

If that were not enough, the now-provided discovery remains deficient. Indeed, the email in which he purportedly sent the infringement to the Liebowitz Law Firm or the Sanders Law Group remains glaringly absent from the production. As described below (*see infra* Sec. III), the belated discovery reveals misleading, if not outright false, statements made to the Court. Plaintiff and his counsel should be sanctioned accordingly.

## ARGUMENT

## I.    PLAINTIFF'S FURTHER CONDUCT EVIDENCES DISCOVERY VIOLATIONS WARRANTING DISPOSITIVE SANCTIONS

The Court has previously recounted the legal standard for sanctions pursuant to Fed. R. Civ. P. 16 and 37 in this case. *See* Order at 10-11. When determining whether dismissal is appropriate as a sanction for discovery violations, including spoliation, under Rule 37 and/or failure to obey scheduling, discovery, and other pre-trial motions under Rule 16(f), a court may consider a variety of factors, "including: (1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance, and (5) whether the non-compliant party had been warned of the consequences of his non-compliance." *Id.* at 11 (quoting *Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 208 (S.D.N.Y. 2002) (collecting authority)). In the prior Order, the Court already found that the "first, third, fourth, and fifth factors weigh in favor of dispositive sanctions" noting while the availability of lesser sanctions mitigated against dismissal, the Court "may revisit the issue if Plaintiff's pattern of noncompliance continues." *Id.* at 11-12. Since this Order, as shown above, Plaintiff has indeed continued his pattern of noncompliance by, *inter*

*alia*, failing to produce all responsive documents, serving false and incomplete initial disclosures, serving insufficient contention interrogatory answers, and failing to comply with the operative Protective Order. Moreover, the limited discovery Plaintiff has provided reveals previous violations, including spoliation and failure to comply with the Court's previous order of November 20 (ECF No. 31), warranting dismissal. Indeed, due to "the egregiousness of the conduct at issue and because it continued in the face of repeated, documented examples of non-compliance and repeated inquiries by [ ] counsel and the Court, a lesser sanction would not be adequate to penalize [Plaintiff] and [his] counsel here or to deter others from similar misconduct in the future." *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 230 (S.D.N.Y. 2003), *adhered to on reconsideration,* 2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004) (citation omitted).

To avoid any doubt, all other factors continue to favor not just financial sanctions but dismissal, especially when considered alongside the long list of previous misconduct committed by Plaintiff. Plaintiff unquestionably had notice of dismissal sanctions, yet continued his noncompliance, showing his willfulness. The duration of noncompliance now extends seven months from when initial disclosures were due. And Grailed has been severely prejudiced—expending significant time and resources to simply obtain the discovery to which this Court has twice found it is entitled, then learning at a second deposition date that further clearly relevant documents exist, and finally only receiving documents after such deposition had been held.

Moreover, Grailed has been further prejudiced in its meritorious defense of the case by Plaintiff's spoliation of evidence. Under the Copyright Act, claims for copyright infringement must be brought within three years after the claim accrued. 17 U.S.C. § 507(b). In the Second Circuit, a copyright claim accrues "upon actual or constructive discovery of infringement."

*Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123 (2d Cir. 2014). Plaintiff filed his initial

Complaint May 8, 2024. ECF No. 1. If Plaintiff discovered the alleged infringement prior to May

8, 2021, his claims are time-barred. At his deposition he testified unequivocally:

> Q.    To be clear, you discovered this photograph and your law firm did not discover
>
>        the photograph on Grailed's website?
>
> A.    Yes.

Barbera Dep. 155:3-7. [2] While he claims he discovered the infringement on April 6, 2022,[3] there

is not a single document produced regarding Plaintiff's purported discovery. Nietes Decl. ¶ 6.

Plaintiff has now confirmed at his deposition he has no remaining documents regarding

investigation of his claims. Barbera Dep. at 311:15-312:24. To claim Plaintiff conveyed this

information to his counsel without any written documentation in April 2022, and counsel

subsequently knew the exact date of discovery for filing of the Complaint in May 2024—again

with no written confirmation whatsoever—strains any credulity. Worse, Plaintiff admitted at his

deposition he ***deletes*** emails, including those containing screenshots documenting his discovery

of purported infringement, after one year as a matter of course, including in this case, and that no

one has ever told him to stop this practice despite 70-100 cases of litigation filed in the last five

years. *Id.* at 216:13-23, 220:9-221:10, 223:4-19.

---

[2] A document (produced belatedly, yesterday, April 3, 2025) shows that Plaintiff's attorneys later sent him an email with a URL to Grailed's website for approval to pursue the claim in July 2022. *See* Nietes Decl., Ex. U. However, this confirmation provides no indication of when Plaintiff informed counsel of the use or why it took nearly two years from such date to commence the action. *See id.*

[3] This date is, perhaps not coincidentally, roughly around the same time that the Liebowitz Law Firm merged into the Sanders Law Group. *See* Nietes Decl., Exs. P-Q. The date also is more than two years prior to suit, which indicates that the latest his email on the matter would have remained in existence before deletion would be April 6, 2023. Query how anyone would know the date if Plaintiff did not have it and his counsel did not produce it.

Additionally, Plaintiff must prove his ownership of the Photograph affirmatively in his *prima facie* case of copyright infringement. *See Wozniak v. Warner Bros. Ent. Inc.*, 726 F. Supp. 3d 213, 238 (S.D.N.Y. 2024) (dismissing copyright claim at summary judgment for lack of ownership in work). Plaintiff's ownership is in question, as Jawad Elatab appears as a contributor to the Photograph in Plaintiff's own records. *See, e.g.*, Nietes Decl., Ex. W. However, as a result of this practice of deleting relevant information after just one year, Grailed cannot explore this issue of ownership as the creation and registration of the Photograph were alleged to be in January and April 2019 respectively, and would have been deleted pursuant to Plaintiff's practices in 2020.

Thus, due to Plaintiff's own actions, Grailed has no way of ascertaining the truth as to these crucial—and dispositive—aspects of the case. Thus, while there is a "preference for resolving cases on the merits," here, Plaintiff's "wholesale destruction of documents, by omission or commission, has made that preferred path impossible. As is clear from the factual recitation, untold numbers of documents from the time period most critical to the case are irretrievable. . . . Accordingly, all of the factors generally considered under Rule 37 call for imposition of the most severe sanction." *Metro. Opera Ass'n, Inc.*, 212 F.R.D. at 230 (citation omitted); *see also Beers v. Gen. Motors Corp.*, 1999 WL 325378, at *4 (N.D.N.Y. May 17, 1999) ("Plaintiff should be held responsible for both his expert's loss of the crucial evidence, and his counsel's defiance of court orders. This is the type of fault required for dismissal under Rule 37[.]").

The Court should also order Plaintiff and his attorneys be held jointly and severally liable for Grailed's fees it has now incurred in attempting to secure Plaintiff's compliance—once again—with the Court's orders. *See Usherson v. Bandshell Artist Mgmt.*, 2020 WL 3483661, at

*20 (S.D.N.Y. June 26, 2020), *aff'd in part sub nom. Liebowitz v. Bandshell Artist Mgmt.*, 858 F. App'x 457 (2d Cir. 2021), and *aff'd sub nom. Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021) (awarding fees even following dismissal of affirmative claims). Further, any dismissal of Plaintiff's claims should not affect Grailed's ability to collect fees that the Court already ordered as sanctions in connection with the prior Order. *See id.*

If the Court does not dismiss plaintiff's claims, in the alternative, it should issue adverse inference sanctions that the lost information is presumed to be unfavorable to Plaintiff on his ownership of the Photograph and Grailed's defenses including statute of limitations and equitable estoppel on summary judgment, and instruct the jury must presume the same if this matter proceeds to trial. Fed. R. Civ. P. 37(e)(2)(A)-(B); *see also In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 200-01 & n.32 (S.D.N.Y. 2007), *aff'd sub nom. Gordon Partners v. Blumenthal*, 2007 WL 1518632 (S.D.N.Y. May 17, 2007) (adverse inference sanction for spoliation where party was "at a minimum grossly negligent" in spoliation and noting the adverse inference will be considered on the "pending summary judgment motion"). Plaintiff should also be ordered to sit for a second deposition at his expense regarding the documents he produced after his March 28, 2025, deposition which was well after the Court-ordered deadline first of November 27 (*see* ECF No. 31) and then March 5.

## II.    PLAINTIFF SHOULD BE HELD IN CONTEMPT

Plaintiff should also be held in contempt. A court has "inherent power" to hold a party in contempt as "a necessary function for purposes of managing and maintaining order in the efficient and expeditious administration of justice." *Cordius Tr. v. Kummerfeld Assocs., Inc.*, 658 F. Supp. 2d 512, 515 (S.D.N.Y. 2009) (citations omitted). This power may be exercised where: "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a

reasonable manner to comply." *Id.* (quoting *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir.1989)). While contemptuous conduct generally includes "willful disobedience of, resistance to, or interference with the court's lawful process, order, directive, or instruction or its execution," the Court need not "find the conduct at issue was willful in order to conclude that it merits a civil contempt finding." *Id* at 515-16 (citations omitted).

This Court clearly and unambiguously ordered Plaintiff to "produce ***all*** documents responsive to Defendant's document requests" within seven days. Order at 13-14 (emphasis added). It further ordered Plaintiff to serve his initial disclosures and answers to Grailed's contention interrogatories on the same time frame. *See id.* The Court also previously made the same order regarding production of documents on November 20. *See* ECF No. 31 at 3, 6. As described above, Plaintiff's document production, along with his initial disclosures and contention interrogatory answers, were incomplete on both ordered dates of production for a laundry list of reasons. *See supra* at 4-6. They remain deficient. To the extent certain of the documents do not exist, Plaintiff should be sanctioned for spoliation and discovery violations as discussed. However, there are a number of documents that Plaintiff confirmed at his deposition do exist that he did not produce. *See, e.g.*, Barbera Dep. at 228:14-229:22, 236:23-238:11, 301:18-302:25, 310:7-311:8. There is also a number of documents referenced within the production itself including, for example, settlement agreements with Andy Cohen, Grandari, and Milk Snob that are still not in the production. Nietes Decl. ¶ 6 & Exs. J-L. And this is nothing to say of the documents from 2018-2022, including the settlement agreements which are negotiable instruments that Plaintiff entered during this time period, that have not been produced which, unless the attorneys who joined Sanders Law Group from the Liebowitz Law Firm in 2022 have shirked their ethical obligations, Sanders Law Group must have in its possession. *See* N.Y. State

Bar Ass'n Comm. On Prof'l Ethics, Op. 1192 (June 9, 2020), https://nysba.org/ethics-opinion-1192/?srsltid=AfmBOooBCDaPFJKocz3fbURY9rZyIgyyKH6SDm_B77W6Fz7BDBUP9zGt ("an attorney's duty to maintain a client's closed file is a duty that every law firm partner owes to every past firm client, no matter when the individual partner joined the firm, and a duty that continues during and after the firm's dissolution" and "documents with intrinsic value" including "negotiable instruments" must be retained "for an indefinite period.").

Plaintiff did not diligently comply with both the Court's Order of March 5, 2025 nor its order of November 20, 2024 compelling production. That he continued to produce documents up to last night—some of which are not privileged and directly responsive to Grailed's requests served in September—is evidence of that. *See, e.g.*, Nietes Decl. ¶ 25, Ex. W (individual sales reports for Photograph at issue not produced until April 3, 2025). Moreover, at his deposition, Plaintiff admitted that he did not search for documents in connection with the Order in March. *See* Barbera Dep. at 306:12-21.

Thus, Plaintiff has violated the Court's Order by—for a second time—serving untimely and incomplete productions to Grailed's discovery requests that were the subject of such Order and should be held in contempt. *See M. Harvey Rephen & Assocs., P.C. v. Chase Bank USA, N.A.*, 853 F. App'x 690, 692 (2d Cir. 2021) (summary order) ("The district court did not abuse its discretion in holding Rephen & Associates in contempt. The district court's order was unambiguous and set a clear timeline for Rephen & Associates to provide the requested documents and deposition. . . . Proof of noncompliance is clear because Rephen & Associates did neither").

Unless Plaintiff is able to meet his burden of production that he "lacks the financial capacity to comply," Plaintiff should be sanctioned for his contempt by being ordered to pay

Grailed's attorneys' fees incurred in connection with Grailed's attempt to procure Plaintiff's compliance with the Order (which remains ongoing). *See Rodriguez v. New Generation Hardware Store Corp.,* 2024 WL 1406953, at *2 (S.D.N.Y. Apr. 2, 2024). And, if Plaintiff's claims are not dismissed, he should be sanctioned in an amount per day to be determined by the Court for every weekday that he continues to be in noncompliance, in line with previous sanctions awarded by this Court for failure to comply with orders regarding discovery. *See, e.g.*, *id.* (awarding $500 per day as a sanction for failure to comply with information subpoenas).

## III.    PLAINTIFF AND HIS ATTORNEYS SHOULD BE SANCTIONED FOR MAKING MISREPRESENTATIONS TO THE COURT

"A court may impose sanctions under its inherent authority if 'it finds, by clear and convincing evidence, that the party or attorney knowingly submitted a materially false or misleading pleading, or knowingly failed to correct false statements, as part of a deliberate and unconscionable scheme to interfere with the Court's ability to adjudicate the case fairly.'" *Usherson*, 2020 WL 3483661, at *9 (S.D.N.Y. June 26, 2020) (citation omitted). The now-provided discovery, along with answers Plaintiff provided at his deposition, establish Plaintiff and his counsel have submitted misleading and false statements to the Court in no fewer than six instances.

*First*, in the Amended Complaint, Plaintiff alleges that he discovered the infringement on April 6, 2022. ECF No. 10 ¶ 25. He further testified unequivocally that he, not his lawyers, discovered the alleged infringement here. *Id.* at 155:3-7. As described above, no emails or any other produced documents reflect the purported April 6, 2022 discovery date. Worse though, on April 13, 2022 Plaintiff emailed Rebecca Liebowitz stating: "Sorry for the late reply!! I was on vacation away with family *for the last month*." Nietes Decl., Ex. L at BARBERA02059 (emphasis added). Plaintiff confirmed at his deposition that he does not search for infringements

15

while on vacation, Barbera Dep. at 69:6-70:7, and the email confirms that Plaintiff had not been responding to emails regarding infringements from April 5-12, 2022. Nietes Decl., Ex. L at BARBERA02059-2061. Plaintiff also testified he cannot recall if he was on Grailed's website while on vacation. Barbera Dep. at 156:19-22.  Further, on March 14, 2022, Plaintiff emailed Ms. Liebowitz stating: "I have a huge batch of new infringements and stuff I was holding during your transition." Nietes Decl., Ex. O at BARBERA02043. And Plaintiff did not even recognize the operative Complaint or its allegations. Barbera Dep. at 132:10-25, 146:18-24; 149:19-23. All of this taken together highly suggests the April 6, 2022 discovery date of the purported infringement is likely fabricated, or at least was not adequately investigated with the requisite diligence to file a federal lawsuit—especially where the statute of limitations has run on the claim. *See supra* Sec. I. [4]

*Second*, in Plaintiff's oppositions to Grailed's motion to compel (ECF No. 27) and to Grailed's first motion for discovery sanctions (ECF No. 29), Plaintiff advanced the argument that the 30-day period for discovery responses resulted in a due date of October 11, 2024, not October 10, 2024, and this calculation by Sanders Law Group was the reason for the late service. Not only was this incorrect, as the Court found (ECF No. 31), but it was also frivolous, and Plaintiff's counsel knew it to be so. Indeed, on October 9, 2024, counsel sent an email to Plaintiff regarding the discovery responses in which counsel stated: "I had it in my head that this was due today, but, apparently, it's due tomorrow" – *i.e.*, October 10, 2024. Nietes Decl. ¶ 18, Ex. O. No produced emails reflect that Sanders Law Group believed the due date to be October 11, 2024.

---

[4] The foregoing paragraph will also be the subject of a motion pursuant to Fed. R. Civ. P. 11. Pursuant to Rule 11(c)(2), Grailed served a draft of the motion on Plaintiff's counsel on April 4, 2025. Nietes Decl. ¶ 26.  If the relevant pleadings are not withdrawn or appropriately corrected within 21 days, Grailed intends to proceed with the motion.

*Id.* Thus, counsel knew the proper due date and seems to have advanced an argument he knew to be incorrect and an untrue explanation for the late response, not once but twice before the Court.

*Third*, produced emails directly contradict the statement Plaintiff's counsel made in signed briefs to the Court that Sanders Law Group has "no association" with Richard Liebowitz of the Liebowitz Law Firm. *Compare* ECF No. 29 at 2 n.1 *with* Nietes Decl., Exs P, Q (referring to a "merged" Sanders Law Group and Liebowitz Law Firm). Plaintiff's counsel doubled down on this misrepresentation in his response letter to Grailed stating: "the Firm [Sanders Law Group] did not 'merge' with the Liebowitz Law Firm but instead purchased its goodwill (i.e. client list). Neither Richard Liebowitz nor Rebecca Liebowitz were ever members of the Firm and The Liebowitz Law Firm continued to exist independently of the Firm after the transaction." Nietes Decl., Ex. T at 5. But this is directly contradicted by documents that Plaintiff himself produced. Indeed, Rebecca Liebowitz sent an email from "rliebowitz@sanderslaw.group" stating: "As you know, LLF recently merged with SLG" where she included in her signature block "Associate, Sanders Law Group". This association is key given that the Sanders Law Group, by way of the attorneys from the Liebowitz Law Firm, evidently would have relevant information for the pre-merger period of 2018-2021, encompassing the Photograph's creation date, registration date, and likely discovery date. Indeed, Plaintiff testified at his deposition that the Liebowitz Law Firm applied for the registration of the Photograph at issue and that he was uninvolved in the process. *See* Barbera Dep. at 99:24-100:24; 104:3-25.

*Fourth*, in responding to Grailed's prior motions seeking contempt sanctions, Plaintiff stated in his briefs the reason he produced documents belatedly to the Court's November 20 Discovery Order (ECF No. 31) was that "the production was taking longer than expected due to the limitations of the servers which Plaintiff needed to search." ECF No. 42 at 10. But the

documents reveal <mark>the true reason the production was late: Plaintiff's counsel only sent a full list of documents which Plaintiff was obligated to produce on December 2, 2024 – *i.e.*, ***after*** the Court's deadline to produce documents of November 27, 2024</mark>. *See* Nietes Decl, Ex. R at BARBERA02011-12.

*Fifth*, Plaintiff submitted a declaration under penalty of perjury <mark>that contains, at best, misleading statements but, more likely, false information to the Court</mark>. Plaintiff claimed the tardiness of the production was due to technical difficulties and that he missed opportunities to photograph Taylor Swift and Rihanna. ECF No. 41 ¶¶ 7-12, 23. As noted above, though, <mark>the true reason for the late production in violation of the Court's Order was that his counsel only sent the full list of documents which Plaintiff was obligated to produce on December 2, 2024 *after* the Court's deadline to produce documents</mark>. *See* Nietes Decl, Ex. R. Further, counsel wrote to Plaintiff: "<mark>I hope you had a relaxing and fun holiday weekend</mark>," suggesting that Plaintiff was indeed not diligently spending time responding to the Court-ordered discovery, and that he had not been working during this time period such that he missed the opportunities to photograph the above-referenced individuals.

*Sixth*, counsel for Plaintiff certified in a signed pleading filed December 30, 2024: "Plaintiff does not have any other documents responsive to Defendant's requests. " ECF No. 42 at 10. Plaintiff's declaration swears to the same. ECF No. 41 ¶ 22. Counsel repeated the same at the March 5 hearing. Yet on April 3, 2025—over three months since the original statement— Plaintiff continues to produce documents that are responsive to Grailed's requests, including documents <mark>that are not privileged</mark> and should have been produced months ago. *See* Nietes Decl., ¶¶ 22, 25 & Ex. W.

"[T]his misconduct is not unique to this case, but fits a broader pattern." *Usherson*, 2020 WL 3483661, at *18. Even setting aside the well-known history of sanctions levied on the Liebowitz Law Firm (*see id.* at *12, 19, 22-23 (listing cases in which the Liebowitz Law Firm was sanctioned)) which admittedly "merged" with the Sanders Law Group (Nietes Decl., Ex. Q), and the misconduct in this case, Sanders Law Group has a pattern of misconduct resulting in sanctions in many other cases. *See, e.g.*, *BWP Media USA Inc. v. Urbanity, LLC*, 696 F. App'x 795, 797 (9th Cir. 2017) (summary order) (upholding sanctions); *Viral DRM, LLC v. Rhino Towing Servs.*, Inc., 2024 WL 4495482, at *2 (C.D. Cal. Oct. 15, 2024) (failure to comply with court order); *Ward v. Credit Control Servs., Inc.*, 2022 WL 2048707, at *4 (E.D. Cal. June 7, 2022) (sanctioned for violating court order); *Bee Creek Photography v. Lonestar Cap. Holdings LLC*, 2024 WL 3158165, at *1 (W.D. Tex. June 6, 2024) (admonished and warned for at least two violations of local rules), *adopted*, 2024 WL 3152387 (W.D. Tex. June 24, 2024); *Bee Creek Photography v. Fronks LLC*, 2024 WL 3669866, at *1 n.2 (W.D. Tex. Aug. 2, 2024) (violation of local rule), *adopted*, 2024 WL 3898110 (W.D. Tex. Aug. 20, 2024), *adopted*, 2024 WL 3898110 (W.D. Tex. Aug. 20, 2024); *BWP Media USA, Inc. v. Internet Brands, Inc.*, 2016 WL 7626445, at *2 (C.D. Cal. Oct. 13, 2016) (failure to comply with local rule). Thus, "[i]t follows that sanctions are warranted on this basis, as well." *Usherson*, 2020 WL 3483661, at *18.

*    *    *

Finally, Plaintiff and his attorneys should be held jointly and severally liable for all sanctions imposed given counsel's responsibility for the misconduct. *Exp. Dev. Canada v. E. Coast Power & Gas, LLC*, 2024 WL 4566146, at *4 (S.D.N.Y. Oct. 24, 2024) (finding both client and attorneys jointly and severally liable in part as both were responsible for conduct resulting in fees).

## CONCLUSION

In light of the foregoing litany of sanctionable conduct, considered together with the other conduct for which Plaintiff has already been sanctioned (*see* ECF No. 49), Grailed respectfully requests that the Court sanction Plaintiff for his continued discovery violations and misconduct by dismissing Plaintiff's claims pursuant to Fed. R. Civ. P. 16(f) and 37 *et seq.*, and pursuant to the same along with the Court's own inherent authority, issue sanctions finding Plaintiff in contempt, ordering that he and his attorneys be held jointly and severally liable for Grailed's attorneys' fees sought in attempting to procure compliance with the Court's Order (including this motion), and granting any other relief the Court deems just and proper.

Dated:    New York, New York
          April 4, 2024

MITCHELL SILBERBERG & KNUPP LLP

By:  /s/ Andrew Nietes
     _____
     Eleanor M. Lackman
     Andrew Nietes
     437 Madison Ave., 25th Floor
     New York, New York 10022-7001
     Telephone: (212) 509-3900
     Facsimile: (212) 509-7239

     *Attorneys for Defendant Grailed, LLC*