# EXHIBIT T



333 EARLE OVINGTON BOULEVARD, SUITE 402
UNIONDALE, NEW YORK 11553
T: 516-203-7600
F: 516-282-7878

April 3, 2025

Andrew F. Nietes, Esq.
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Avenue, 25th Floor
New York, New York 10022

Re: *Robert Barbera v. Grailed, LLC*
Case No: 1:24-cv-03535-LJL

Dear Mr. Nietes:

We are in receipt of your letter dated March 23, 2025, addressing what Defendant believes to be discovery deficiencies and alleged misconduct by counsel and write in response thereto.

To begin, your allegations of misconduct against the Firm and its individual attorneys are not only speculative, they are patently offensive. Further, such allegations run afoul of the Rules of Professional Conduct. As you are aware, the General Standards of Civility provide that lawyers should be courteous and civil in all professional dealings with other persons and must act in a civil manner regardless of the ill feelings that their clients may have toward others. *N.Y. Comp. Codes R. & Regs. tit. 22, § Pt.1200,App.A*. Effective representation does not require antagonistic or acrimonious behavior and lawyers are instructed to avoid vulgar language, disparaging personal remarks or acrimony toward other counsel, parties or witnesses. *Id.* This maxim is repeated in SDNY Local Rule 26.4(a), which requires that counsel are expected to cooperate with each other and to be courteous in their dealings with each other, including in matters relating to scheduling and timing of various discovery procedures. Here, your accusations that the Firm (or the individual attorneys associated therewith) and/or its client have fabricated evidence, lied and/or suborned perjury clearly trample the mandates of the Rules of Professional Conduct and the Local Rules of the Court. It is one thing for you or your client to believe that discovery responses should be amended or supplemented, but it is quite another to recklessly levy *ad hominem* attacks which are rife with acrimony, offensive language and scandalous on their face. In light of these rules, we will not respond in kind. In terms of the substantive elements of your letter, please be advised as follows:

**Document Production**

The first item of your letter alleges that Plaintiff's supplemental document production is deficient for one of two reasons. First, your letter states that the document production is deficient insofar as certain attachments or links contained within emails are not visible in the production. Second, your letter states that the document production is deficient insofar as the production begins in 2022, yet your demands sought documents dating back to 2018. We will address these contentions in seriatim.



With respect to the first point, while your letter fails to explain how the inability to access links or attachments to wholly unrelated cases renders the referenced emails "worthless," to the extent that an email containing a link to third-party material is still active, the associated document with that link have been produced by our office in response to your demand. Further, to the extent that there was an attachment to the email, that has also also now been produced.

With respect to the second point, your construction of an attorney's duty to maintain closed files under the ethics opinion cited is overly broad and not supported by a plain reading of same. More specifically, the opening statement of the opinion states that "[w]ith certain important exceptions, a lawyer has no ethical duty to retain closed client files (or other documents held by the lawyer owned by third parties) for an indefinite period when neither the client nor the third party requests their return." The "documents of intrinsic value" which are subject to the exception are identified as being "wills, deeds, or negotiable instruments, as well as documents that the lawyer knows or should know that the client or third party may need in the future." Continuing, the opinion states that, other than the "important exceptions" described, "nothing in the Rules requires lawyers to maintain all files and records concerning an attorney-client relationship for any predetermined period of time." Instead, "a lawyer is free to discard such files and records consistent with common sense and the prudential exercise of professional judgment." In light of that observation, the opinion expressly declined to set a rule for the preservation of internal memoranda or handwritten notes of a meeting, insofar as such matters often pivot on … legal doctrines such as the work product privilege" and the opinion declined to "enter that fray," saying only that "the lawyer may dispose of them as the lawyer sees fit unless a legal duty (compulsory process being an instance) exists to require their preservation." The opinion expressed a similar position with respect to attorney-client communications, declining to state if there is a minimum period of time for which such communications must be maintained after the termination of the attorney-client relationship. In that the documents identified in your letter are clearly not documents of intrinsic value, there was no duty to maintain them beyond the prudent exercise of professional judgment.

Regardless, and far more importantly, we do not know if the documents you are seeking exist or if they were disposed of since they are not our documents. Further, I do not believe the documents at issue would be those of the individual attorneys since it is my understanding that none of attorneys were directly retained by any client and that all of the retainers were with the Liebowitz Law Firm as a firm. Further, it is also my understanding that all of the case files and documents you are referring to, including any email communications, belonged to the Liebowitz Law Firm and not the individual attorneys who were employees thereof. As a result, your allegation that the attorneys who were previously employed by the Liebowitz Law Firm and are now employed by this Firm "shirked their duties" by failing to maintain attorney-client communications or settlement agreements in matters that were fully consummated is without merit.

Additionally, the Firm did not acquire from the Liebowitz Law Firm any of its closed files, nor did the Sanders Law Firm purchase any of the Liebowitz Law Firm's computer equipment and/or email servers and therefore does not have ownership, possession and/or control of the Liebowitz Firm's historical emails or case files. Simply, the Sanders Law Firm cannot give you



that which it does not have and, therefore, any deficiency with regard to the failure to produce earlier emails not in the Firm's possession is misguided.

### Initial Disclosures

Your letter next alleges that Plaintiff's initial disclosures are "substantively deficient" insofar as the disclosures: (i) purportedly fail to identify persons with knowledge of Plaintiff's discovery of the infringement; (ii) do not identify Jawad Elatab as an individual at Backgrid who may have relevant information; and (iii) does not provide a proper calculation of damages. Defendant's objections in this regard are without merit insofar as we produced the initial disclosures as prepared on September 6, 2024, as directed by the Court. At that time, Plaintiff identified himself, along with Donna Halperin, as persons with knowledge of creation and registration of the Photograph, as well as licensing of same. At the time the initial disclosures were prepared, no discovery had taken place, and Plaintiff was not then in possession of documents from Defendant to provide a calculation of damages (to the extent that he would not choose to elect an award of statutory damages). Plaintiff has since identified persons at Backgrid with whom he dealt in his supplemental interrogatory responses and has now served supplemental initial disclosures. Further, as you are now aware after having taken Plaintiff's deposition, Jawad Elatab is not a person associated with Backgrid. Instead, he is Plaintiff's employee and, as Plaintiff testified at his deposition, Mr. Elatab was not present with Plaintiff when the Jonah Hill photographs were taken and has no knowledge of any facts relevant to this case.

### Contention Interrogatory Answers

Your letter next alleges that Plaintiff's responses to Defendant's contention interrogatories are deficient, however, your objections are without merit.

You object to Plaintiff's response to interrogatory 13 on the grounds that the answer was not sufficiently specific because it did not provide detail as to what camera equipment was used in taking the Photograph and does not mention Jonah Hill by name. Plaintiff responded by stating that he came to decide on what equipment he wishes to use through a trial-and-error process spanning more than 20 years. He also stated that "Plaintiff also determined how prominently Mr. Hill would be featured in the Photograph, relevant to the background images, and the camera focus as to each." He therefore did mention Jonah Hill in his response. As you are aware, the Court has Ordered Plaintiff to sit for a deposition, which he has done. You had the opportunity to probe the answers to these questions, which you did, and Plaintiff fully answered same.

You next object to Plaintiff's response to interrogatory 14 on the grounds that Plaintiff did not describe in detail the harm to the marketplace suffered as a result of Defendant's infringement of the Photograph. This objection is improper as it seeks to shift the burden from Defendant to Plaintiff, as it is well settled that Grailed, as the party asserting a fair use defense, bears the burden of showing a lack of harm to the marketplace. *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 189 (2d Cir. 2024). Notwithstanding the foregoing, Plaintiff responded by saying that he "created the Photograph for the express purpose of marketing it to businesses, such as Defendant. Defendant copied and displayed Plaintiff's Photograph in its entirety. By displaying Plaintiff's Photograph in its entirety on the Website, other potential licensees could simply copy the Photograph from Defendant's Website, rather than seeking to license same from Plaintiff" and



has since supplemented that response by saying that he "often sells pictures to fashion marketplaces and Defendant, who hosts a buy/sell platform, features pictures of celebrity fashions to promote sales. Therefore, Defendant is within Plaintiff's target market and its use of Plaintiff's photograph without paying for it harms his market." To the extent that you found either of these responses to be deficient, Plaintiff responded to any such questions at his deposition.

You next object to Plaintiff's response to interrogatory Nos. 15-18 on the grounds that Plaintiff did not describe the source of his information forming the basis of his beliefs that the infringement increased traffic to any of Grailed's website, a large number of people viewing the alleged infringement, or that Grailed directly profited from the alleged infringement. Likewise, you contend that the responses fails to account for traffic to the specific blog, rather than the website overall; and that it is purportedly speculative to suggest that everyone who saw the blog post then went to the main website, or vice-versa. The bases for Plaintiff's belief in the foregoing regards are based on observations of Defendant's website and how it holds itself out to the public. With respect to the infringement at issue in this case, Defendant disabled the post at the outset of this action, making it impossible for Plaintiff to have analyzed that page individually. Plaintiff has responded to these Interrogatories to the best of his knowledge. You also asked these questions of Plaintiff at his deposition, and he responded that it is his belief that a website's revenue is based at least in part on the amount of page views it receives. That is particularly so where, as here, Grailed's website is a buy/sell platform.

You next object to Plaintiff's response to interrogatory Nos. 19-20 on the grounds that Plaintiff provided only "blanket statements" to support his belief that Grailed made commercial use of the Photograph and that the Photograph was used in connection with selling or offering to sell product(s) to the public. As with the above, Defendant disabled the post at the outset of this action and failed or refused to respond to Plaintiff's discovery demands. Plaintiff therefore responded to these Interrogatories to the best of his knowledge.

You next object to Plaintiff's response to interrogatory Nos. 21-22 on the grounds that Plaintiff did not explain how he actually discovered Defendant's infringement of the Photograph. This objection is without merit insofar as the interrogatories asked Plaintiff to explain how he could not have discovered the infringement before April 6, 2022 (Interrogatory 21) or before May 8, 2021 (Interrogatory 22). Plaintiff responded to these Interrogatories as propounded. These Interrogatories did not ask Plaintiff to describe how he discovered Defendant's infringement. The objection is therefore unfounded insofar as it seeks to fault Plaintiff for failing to answer a question not asked. Moreover, when asked this question at his deposition, Plaintiff stated that he is a registered user of the Grailed platform and that he discovered the unlicensed posting of his picture while casually browsing the website.

You next object to Plaintiff's response to interrogatory 23 on the grounds that it purportedly failed to explain Plaintiff's contention that Backgrid is not the proper party with standing to assert the claims in this action. In response, Plaintiff stated that he owns the copyright to the Photograph at issue and Backgrid does not, and has provided a copy of the registration certificate in discovery to that effect. Plaintiff fails to understand the basis for Defendant's belief that this response is in any way deficient. Further, as Plaintiff stated at his deposition, when Backgrid approached him to



be a contributor, he said he would not have agreed to post content to the Backgrid platform unless it was agreed that Plaintiff would retain all rights to his copyrights.

Finally, you object to Plaintiff's response to interrogatory 24 on the grounds that Plaintiff did not provide any specific details with respect to the conversation between he and Jonah Hill on the date the Photograph was taken. Plaintiff responded by saying that he was in New York City and recognized Jonah Hill walking in public. Plaintiff approached Mr. Hill and asked if he could take a picture. The latter agreed. Plaintiff does not recall the substance of the brief conversation *in haec verba* beyond the answer given. And, as with the above, Plaintiff subsequently answered those questions at his deposition and explained all details of his interaction with Jonah Hill on the date the photograph was authored.

### **Violations by Counsel and/or Plaintiff**

In the next prong of your letter, you accuse Plaintiff, the Firm (and/or its individual attorneys) of misconduct for what you describe as fabricating evidence, lying, and a garden variety of ethical violations, in five separate points. These allegations are of the most serious in nature and would subject the accuser to discipline if unfounded.

Point One: You identify emails in our privileged production between Plaintiff and Rebecca Liebowitz regarding a "huge batch of new infringements," which you contend that, 'taken together' highly suggest that Plaintiff's date of discovery of the infringement was "likely fabricated." To say that your allegation in this regard is a leap would be an understatement, particularly since the emails do not reference any particular photograph or website or even offer any insight into what Ms. Liebowitz might consider a huge batch. To accuse Plaintiff and/or the Firm of "fabricating" the date of discovery of the infringement at issue in this case on this basis alone is nothing short of reckless.

Point Two: You contend that certain of the privileged emails produced "directly contradict the statement you made in signed pleadings to the Court that Sanders Law Group has 'no association' with the Liebowitz Law Firm" (citing to ECF No. 29 at 2 n.1), which you describe as a "false representation and excuse to avoid producing documents" and has been "grossly prejudicial" to Grailed. Here, you again distort the facts to support Defendant's position. More specifically, Note 1 of ECF 29 states that Richard Liebowitz has no association or affiliation with this Firm. This is a true statement. Further, the Firm did not "merge" with the Liebowitz Law Firm but instead purchased its goodwill (i.e. client list). Neither Richard Liebowitz nor Rebecca Liebowitz were ever members of the Firm and The Liebowitz Law Firm continued to exist independently of the Firm after the transaction. As such, there was nothing inaccurate with regard to the signed pleading.

Points Three and Four: Collectively allege that the Firm purportedly knew that the initial discovery responses were one day late (Point 4) and that it knew that the supplemental responses were late (Point 3), for which you claim we provided untrue representations to the Court. Your position in this regard is again based on a distortion of the facts. When we responded to your letter motion to compel, we stated that the responses served on October 11, 2024, were timely based on the rule on computing time under Fed. R. Civ. Pro. 6. The Court found our interpretation of the Rule to be erroneous, resulting in the issuance of the Order directing Plaintiff to respond to



discovery without objections. There was no false representation made to the Court. With respect to Point 3, the email referenced was merely confirming prior conversations which had taken place timely regarding the document production then still needed.

Point Five: You allege that Mr. Sanders either made a "careless mistake" or "certified an objective falsehood" in the initial disclosures by certifying that such disclosures were electronically served to Ms. Lackman at an office in Los Angeles and without specifying an associated email address. It is one thing for you to describe this as a "careless mistake," but quite another to describing it as "certifying an objective falsehood." As was stated to the Court, Ms. Costigan's service of the initial disclosures and discovery demands to Ms. Lackman's CDAS email address was a mistake, but, it was not an affirmative misrepresentation. As we previously stated, while mistakes should not happen, they sometimes do. This does not rise to the level of misconduct you attribute to it and the Court has already meted out punishment on this issue.

In addition to the above, you accuse the Firm of ethical violations for purportedly failing to properly advise Plaintiff of the date and time of his deposition, and/or for the need to appear for same on the noticed date. As we previously stated and argued to the Court, where a noticing party unilaterally selects date for a deposition, the parties ordinarily meet and confer to either confirm or select a mutually agreeable date. Here, that did not happen. Rather than look to resolve, Defendant chose to proceed with motion practice. That said, again, the Court has already meted out punishment on this issue.

**Further Misconduct**

In the final prong of your letter, you allege that Plaintiff purportedly committed perjury in stating to the Court that he had worked diligently to comply with the discovery Orders when an email references sent by the undersigned inquired as to whether Plaintiff "had a relaxing weekend." This exchange does not support this most serious allegation. As Plaintiff's declaration stated, he and I spent countless hours working on written responses and document assembly which, given the Court's instruction, was both laborious and stress-inducing. The email was merely an expression that Plaintiff was able to find at least some time to decompress while working to comply with the Court's Order.

As we have pointed out, both the Rules of Professional Conduct and the Local Rules of the Southern District of New York require counsel to cooperate with each other both generally and in matters related to discovery, and to be both professional and cordial in all of their dealings, regardless of their personal feelings of the adverse party, or of their client's opinions of the adverse party. Here, there have been no such courtesies, and the majority of our communications have been hostile and denigrating in nature, and is contrary to the aforementioned rules. In this regard, we should all try to do better in working professionally on this matter to its conclusion.

                                                                            Very truly yours,

                                                                            /s *Jonathan M. Cader*
                                                                            Jonathan M. Cader