UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__7/25/2025__

-------------------------------------------------------------------X
                                                                   :
ROBERT BARBERA,                                                    :
                                                                   :
                                 Plaintiff,                        :
                                                                   :
                                                                   :        24-cv-3535 (LJL)
                 -v-                                               :
                                                                   :        OPINION AND ORDER
GRAILED, LLC,                                                      :
                                                                   :
                                 Defendant.                        :
                                                                   :
------------------------------------------------------------------ X

LEWIS J. LIMAN, United States District Judge:

What should be a straightforward copyright infringement case has now spawned its third and fourth motions for sanctions. Plaintiff Robert Barbera ("Plaintiff") alleges that Defendant Grailed Inc. ("Defendant") infringed his copyright in a photograph of American actor and director Jonah Hill (the "Photograph").

Defendant now moves for sanctions against Plaintiff pursuant to Federal Rules of Civil Procedure 11, 16(f), 37, and the Court's inherent authority. Dkt. Nos. 52, 97.

## BACKGROUND

### I.    The Underlying Case

Plaintiff alleges that he owns the rights and licenses to the Photograph but that "[o]n or about November 16, 2020," "Defendant, without permission or authorization from Plaintiff, actively copied and displayed the Photograph on [Defendant's website] and engaged in this misconduct knowingly and in violation of the United States copyright laws." Dkt. No. 10 ¶¶ 4, 22. Plaintiff claims that he "first observed and actually discovered the [i]nfringement on April 6, 2022." *Id.* ¶ 25. Plaintiff alleges that on March 27, 2023, he, through his attorney, served a letter upon Defendant seeking to address Plaintiff's claim of infringement. *Id.* ¶ 41.

II.    **The First and Second Motions for Sanctions**

The Court entered a case management plan and scheduling order on August 13, 2024. Dkt. No. 19.  Initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) were due on August 27, 2024.  *Id.*  Defendant timely served its first request for production of documents and its first set of interrogatories on September 10, 2024.  Dkt. No. 24 ¶ 3; Dkt. No. 24-3.  On November 12, 2024, Defendant filed its first motion for discovery sanctions against Plaintiff pursuant to Federal Rules of Civil Procedure 16 and 37, complaining that Plaintiff had failed to comply with any of the Court-ordered interim discovery deadlines including the deadlines for serving initial disclosures, serving timely responses and objections to Defendant's discovery requests, and serving properly verified interrogatory responses, and that Plaintiff failed to attend his deposition.  Dkt. Nos. 22–24.

On November 13, 2024, Defendant filed a letter motion seeking to compel Plaintiff to supplement his interrogatory responses and to produce documents.  Dkt. No. 25.  Plaintiff's counsel responded that he misconstrued the method for calculating deadlines pursuant to Federal Rule of Civil Procedure 6, and that the motion to compel should be rejected due to Defendant's failure to meet and confer prior to filing the motion.  Dkt. No. 27.

On November 20, 2024, the Court issued a Memorandum and Order resolving the motion to compel and ordering Plaintiff to supplement his interrogatory responses and document production by November 27, 2024.  Dkt. No. 31; *Barbera v. Grailed, LLC*, 2024 WL 4836616 (S.D.N.Y. Nov. 20, 2024).  Among other things, the Court held that Plaintiff: (1) had waived all objections by serving his discovery responses late; (2) had failed to verify his interrogatory responses as required by Rule 33 of the Federal Rules of Civil Procedure; and (3) had asserted inappropriate boilerplate objections to half of the interrogatories and many of the requests for production.  *Id.*  The Court ordered Plaintiff to supplement his interrogatory responses and

document production by one week from the date of the November 20 Order, i.e., by November 27, 2024. *Id.* The Court rejected Plaintiff's arguments in opposition to the motion to compel, reviewing the straightforward and longstanding method for calculating time pursuant to Federal Rule of Civil Procedure 6 and explaining that Plaintiff could not defeat the motion by invoking his own failure to respond to Defendant's invitation to meet and confer. *See id.* at *2 ("[T]here is no loophole wherein a party may escape a motion to compel, or a ruling on such motion, simply by stonewalling its opposing counsel and declining to confer."). Notwithstanding the November 27, 2024, deadline, Plaintiff did not make a responsive production until December 3, 2024, and did not purport to complete the supplemental production until December 16, 2024. Dkt. No. 36 ¶¶ 3–6.

On December 19, 2024, Defendant filed a second motion for sanctions on the basis that Plaintiff had failed to comply with the Court's November 20 Order insofar as his discovery responses were served late and remained deficient. Dkt. Nos. 34–36.

On March 5, 2025, the Court held a conference to address the motions for sanctions and issued a written Memorandum and Order resolving Defendant's first and second motions for sanctions. Dkt. No. 49; *Barbera v. Grailed, LLC*, 2025 WL 722682, at *1 (S.D.N.Y. Mar. 5, 2025). The Court held that Plaintiff had failed to serve initial disclosures as of March 5, 2025— more than six months after they were due—that Plaintiff wrongfully failed to attend his deposition, that Plaintiff failed to serve timely objections or answers to Defendant's contention interrogatories, and that Plaintiff's discovery responses were deficient because he asserted objections that the Court previously had held were waived. *See Barbera*, 2025 WL 722682, at *1–5. The Court ordered the following sanctions: (1) that Plaintiff sit for a deposition at his own expense; (2) that Plaintiff provide responses to Defendant's contention interrogatories within

seven days of the March 5 Order, i.e., by March 12, 2025; (3) that Plaintiff serve his initial disclosures within seven days of the March 5 Order, i.e., by March 12, 2025; (4) that Plaintiff likewise produce by March 12, 2025, all documents responsive to Defendant's document requests, including all documents withheld on the basis of Plaintiff's objections (which had been waived); and (5) that Plaintiff compensate Defendant's reasonable attorneys' fees and costs with respect to both motions for sanctions, the deposition Plaintiff had failed to attend, and Plaintiff's motion to strike the first motion for sanctions. *Id.* at *7.

Notably, the March 5 Order rejected the portion of Defendant's request for sanctions based on Plaintiff's purportedly untimely and incomplete production of documents. Defendant argued that although the Court's November 20 Order required Plaintiff to supplement his document production by November 27, 2024, Plaintiff did not produce any supplemental documents until December 3, 2024, and Plaintiff did not purport to complete the supplemental production until December 16, 2024. Dkt. No. 36 ¶ 3; Dkt. No. 36-4. Defendant additionally argued that the supplemental document productions were missing documents that "must exist" or that Plaintiff indicated he would produce. Dkt. No. 36-5. The Court credited Plaintiff's representations that he could not produce the documents at an earlier date due to the logistical burden, including because the servers he needed to access kept crashing and that he had produced all responsive documents in his possession, custody, or control. *See Barbera*, 2025 WL 722682, at *5 (crediting Plaintiff's averments); Dkt. No. 41 ¶¶ 8–13, 20, 22 (averring under penalty of perjury that the delays in production were caused by technical and logistical issues and that "[t]o the extent that there is any remaining confusion, I hereby represent that I have produced all documents in my possession, custody and/or control which are responsive to Defendants document demands"). The Court accordingly did not impose discovery or monetary

sanctions based on Plaintiff's late and purportedly incomplete productions.  *See Barbera*, 2025 WL 722682, at *5.

### III.    Plaintiff's Subsequent Discovery Conduct

On March 12, 2025, Plaintiff served upon Defendant a document production, his initial disclosures, and answers to the contention interrogatories.  Dkt. No. 86-3.  Defendant claims that Plaintiff's March 12 document production had the following deficiencies:

- Plaintiff failed to produce any documents related to the investigation of Plaintiff's claims and filing of this action;

- Plaintiff produced no correspondence regarding the letter purportedly sent to Defendant on March 27, 2023;

- Plaintiff failed to produce attachments to any of the produced emails;

- None of the images embedded in Plaintiff's produced emails were visible;

- Plaintiff produced no documents from before 2022, despite the fact that Defendant's document requests sought documents dating back to January 1, 2018;

- Plaintiff failed to produce documents referenced within the production itself including but not limited to a contingency agreement with Sanders Law Group, an engagement agreement with an Israeli law firm, and settlement agreements with Andy Cohen, Grandari, and Milk Snob; and

- Plaintiff unilaterally marked the entire production as "Confidential – Attorneys' Eyes Only" without following the procedures in the protective order, which the parties agreed to and the Court entered on March 12, 2025.

Dkt. No. 85 at 4–5 (citing Dkt. No. 86).

Defendant further claims that Plaintiff's March 12 initial disclosures had the following deficiencies:

- Plaintiff failed to list any individuals who may have knowledge of the discovery of Defendant's alleged infringement at issue in this case, including either Plaintiff or his counsel;

- Plaintiff failed to provide contact information for a purportedly relevant individual named Jawad Elatab, despite Elatab appearing throughout Plaintiff's own production;

- Plaintiff's computation of damages stated "[a]s Plaintiff has not yet obtained discovery of Defendant's financial, sales and other relevant records, Plaintiff cannot make a reasonable estimate of the damages sustained or infringing profits he may recover as a result of Defendant's actions" even though discovery had already closed; and

- Plaintiff's counsel, Craig Sanders, certified that he caused the initial disclosures to be served on Defendant's counsel on September 9, 2024, even though the disclosures were not actually served until March 12, 2025.

*Id.* at 5 (citing Dkt. No. 86).

After the parties engaged in much correspondence regarding these deficiencies, Plaintiff served updated contention interrogatory answers and made a further production of the previously withheld email attachments on March 27, 2025, at 4:52 PM—the day before Plaintiff's rescheduled deposition.  Dkt. No. 86 ¶¶ 4–9.  That production included the previously missing attachments to produced emails and the previously nonviewable images embedded in produced emails.  Dkt. No. 89 at 5.  The newly produced attachments included the contingency agreement with Sanders Law Group and the engagement agreement with the Israeli law firm, but did not include settlement agreements with Andy Cohen, Grandari, or Milk Snob.  Dkt. No. 86 ¶¶ 4–9.  In his memorandum of law, Plaintiff states that "[w]ith respect to the settlement agreements with Andy Cohen, Grandari, and Milk Snob, Defendant has taken the position that such documents could not be produced without authorization from the countersigning parties."  Dkt. No. 89 at 5–6; *see also id.* at 18 ("Despite making this demand, Defendant has also taken the position that producing the agreements without consent of the countersigning parties would violate the Court's protective Order.").  Defendant disputes that it has taken such a position, instead explaining that, pursuant to the protective order entered in this case, it was incumbent on Plaintiff to inform the nonparties of the discovery request and that the nonparties could seek a protective order in this case.  Dkt. No. 92 at 4.  Because no such protective order has been sought, Defendant argues that the agreements should have been produced.  *Id.*

6

Plaintiff sat for his deposition on March 28, 2025.  Dkt. No. 86-1 ("Tr.").  At his deposition, Plaintiff confirmed the existence of relevant but unproduced documents.  *Id.* at 228:14–24, 236:23–238:11, 301:18–302:22, 310:7–311:8.  Plaintiff also testified at his deposition that he had deleted documents relevant to this litigation.  *Id.* at 217:7–17.  For one, Plaintiff testified that he deleted "any notes that I wrote down while I was on a phone call" because he did not believe those documents were relevant.  *Id.* at 217:9–25.  Plaintiff stated that he does not keep electronic notes, emails, or text messages and that his "whole life" it has been his practice to "delete[] all this stuff."  *Id.* at 212:14–213:5.  He stated that "I generally keep like the lawsuit stuff for like a year, just in case I ever have to reference something" but that he did not keep some of his notes that were relevant to the instant suit because he did not think it was important to keep them.  *Id.* at 213:6–18.  He stated that he had never been told it was important to keep his notes or to not delete his emails and confirmed that even after a lawsuit is filed, he only keeps documents—including demand letters to putative defendants—for one year and then "I purge all of that."  *Id.* at 213:19–214:24, 216:2–23.  For example, if Plaintiff emailed a screengrab of a purported infringement to his attorney for a potential lawsuit, he would later delete that email because "there's no reason for it to sit in my inbox" and the attorney would "have already saved it on their files."  *Id.* at 220:9–221:13.  Plaintiff claims that he also testified that he would not delete relevant documents if a lawsuit was pending, but he did not submit the portion of the deposition transcript substantiating that testimony.  Dkt. No. 89 at 3.

On April 2, 2025, Defendant informed Plaintiff of its intent to move for sanctions based on the continuing discovery deficiencies and misconduct.  Despite having long been on notice of the deficiencies, on April 3, 2025, Plaintiff responded with yet another document production and supplemental initial disclosures stating that there were "[f]urther responses to follow."  Dkt.

No. 86-19.  Several of the documents produced for the first time in that supplemental production were directly responsive to Defendant's original requests for production and yet were not produced in response to the requests, to the Court's November 20 Order requiring production by November 27, 2024, or to the Court's March 5 Order requiring production by March 12.  Dkt. Nos. 86-21, 86-22, 86-23.  Plaintiff's April 3 production also included a letter providing cross-references informing Defendant which previously produced emails were the parent emails to the attachments Plaintiff produced on March 27, 2025.  Dkt. No. 89 at 5.

## IV.    Plaintiff's Misrepresentations to the Court

Defendant contends that as Plaintiff's discovery has trickled out, the documents and responses reveal that Plaintiff and his counsel made false statements to the Court on several occasions.

First, it is obvious that Plaintiff misrepresented to the Court when he averred, under penalty of perjury, that as of December 30, 2024, he had "produced all documents in [his] possession, custody and/or control which are responsive to Defendants document demands." Dkt. No. 41 ¶ 22.  Plaintiff's counsel certified the same statement in a memorandum of law filed the same day.  Dkt. No. 42 at 10 ("Plaintiff does not have any other documents responsive to Defendant's requests.").  Plaintiff has produced numerous documents since that date that would have been in his possession, custody, or control as of December 30, 2024.  Similarly, although Plaintiff averred on December 30, 2024, under penalty of perjury, that he had worked diligently to find and produce the documents ordered produced by the Court's November 20 Order but experienced delays due to technical issues with the servers he needed to access, Dkt. No. 41 ¶¶ 8–13, 20, Plaintiff subsequently produced a document showing that his counsel did not email him the list of documents to produce until December 2, 2024, *five days after the date by which the Court had ordered the documents produced*, Dkt. No. 86-18.

Second, Plaintiff's Amended Complaint alleges that he discovered Defendant's infringement on April 6, 2022. Dkt. No. 10 ¶ 25. Plaintiff confirmed at his deposition that he, and not his lawyers, discovered the alleged infringement. Tr. at 155:3–7. However, to date, Plaintiff has not produced any documents showing that he investigated or discovered the infringement on that date or that he informed his counsel of the infringement. Plaintiff did produce a screenshot of Defendant's website dated April 14, 2022, showing the purported infringement and an email from Plaintiff's counsel to Plaintiff dated July 13, 2022. Dkt. No. 55-21. Plaintiff's memorandum of law states that "Plaintiff testified credibly and consistently . . . that he discovered the Infringement while scrolling through [Defendant's] website as a user, and further testified that he believed to have advised his attorneys of this Infringement by phone, rather than by email." Dkt. No. 89 at 12. But Plaintiff did not submit that portion of the deposition transcript (or even cite the deposition) and did not aver as much in any of his sworn declarations.

Third, Plaintiff represented to the Court that he served Plaintiff's discovery responses late because he had miscalculated the time pursuant to Federal Rule of Civil Procedure 6. Dkt. No. 29 at 12–13. Plaintiff's opposition to the first motion for sanctions stated:

> Rule 6 of the Federal Rules of Civil Procedure provide that when a period is stated in days or a longer unit of time, one is to "exclude the day of the event that triggers the period" then "count every day, including intermediate Saturdays, Sundays, and legal holidays" and "include the last day of the period." Fed. R. Civ. Pro. 6(a)(1). Here, the computation for measuring the 30-day period for Plaintiff to respond began on September 11, 2024 and, therefore the responses served on October 11, 2024, were timely under the Rule.

*Id.* It now appears false that such a misunderstanding caused Plaintiff's counsel to miscalculate the date on which Plaintiff's discovery responses were due. On October 9, 2024, Plaintiff's attorney, Jonathan Cader, sent an email to Plaintiff regarding the discovery responses in which Cader stated: "I had it in my head that this was due today, but, apparently, it's due tomorrow."

Dkt. No. 86-15.  Plaintiff's counsel thus acknowledged on October 9 that he knew the responses were due on October 10, not October 11 as he later claimed.

Fourth, on March 12, 2025, Plaintiff's counsel, Craig Sanders, certified that he caused the initial disclosures to be served on Defendant's counsel on September 9, 2024.  Dkt. No. 86-2 at 5.  But the initial disclosures were not in fact served on Defendant's counsel until March 12, 2025.  Dkt. No. 86 ¶ 3.  Plaintiff protests that the certification is not false because "[o]n September 6, 2024, Mr. Sanders instructed his paralegal, Laura Costigan, to prepare Plaintiff's Initial Disclosures, . . . for service" and due to human error, Costigan sent the document to an old email address.  Dkt. No. 89 at 6–7.  Therefore, according to Plaintiff, Sanders did not believe the certification to be false when he made it in September 2024.  *Id.*  But that does not explain why Sanders sent Defendant the same certification in March 2025 after it came to light that service had not in fact been made on September 9, 2024, and Sanders knew that he was serving the initial disclosures for the first time.[1]

Finally, Defendant claims that Plaintiff also misrepresented the connection between his current counsel and his prior counsel.  Dkt. No. 85 at 15–16.  In opposition to the first motion for sanctions, Plaintiff wrote:

> Plaintiff will decline to respond to the portion of Defendant's argument which asks the Court to impute bad faith to him because he had been previously been [sic] represented by Richard Liebowitz of the Liebowitz Law Firm, a now disbarred attorney.  The fact that the plaintiff had been represented by another attorney in other cases who has no association with the [Sanders Law Group] is simply inflammatory rhetoric.

---

[1] The Court's March 5 Order held that service was not made in September 2024 and expressly rejected Plaintiff's contention that Sanders could have believed Costigan successfully effected service.  *See Barbera*, 2025 WL 722682, at *3–4.

Dkt. No. 29 at 2 n.1.[2]  As evidence that this statement was false, Defendant points to an email

from Sanders Law Group to Plaintiff on January 20, 2022, stating:

> It is with great excitement that we announce that Rebecca R. Liebowitz, Esq.,
> James H. Freeman, Esq., Donna Halperin, and additional staff members of
> Liebowitz Law Firm, PLLC have joined the Sanders Law Group.  This means that
> clients of Liebowitz Law Firm can be confident in knowing that that they will
> continue to enjoy the existing relationships and receive the dedicated
> representation they received with the Liebowitz Law Firm, going forward with the
> Sanders Law Group. . . . You may choose to continue your existing relationships
> with Rebecca and James, who are now proud members of the Sanders Law
> Group, or, you are at liberty to request that your file be transferred to another
> attorney of your choosing, or take your file.

Dkt. No. 55-16.  Plaintiff also produced an email from Rebecca Liebowitz (sent from the email

address "rliebowitz@sanderslaw.group") dated February 9, 2022, stating that "[a]s you know,

LLF recently merged with SLG."  Dkt. No. 55-17.  The signature block identifies her title as

"Associate, Sanders Law Group."  *Id.*  Plaintiff protests that Rebecca Liebowitz's email "was not

sent by Mr. Sanders, does not bear his signature, and does not accurately describe the transaction

at all," as "[t]he transaction that actually took place involved [Sanders Law Group] hiring certain

staff members, including two attorneys, and soliciting former [Liebowitz Law Firm] clients to

retain it going forward."  Dkt. No. 89 at 3–4.  Ultimately, the missives relied upon by Defendant

do not demonstrate that Richard Liebowitz himself has any association with the Sanders Law

Group such that Plaintiff's challenged statement is false.

---

[2] Cader made a similar representation to Defendant's counsel in a letter dated April 3, 2025,
stating that "Note 1 of ECF 29 states that Richard Liebowitz has no association or affiliation with
this Firm.  This is a true statement.  Further, the Firm did not 'merge' with the Liebowitz Law
Firm but instead purchased its goodwill (i.e. client list).  Neither Richard Liebowitz nor Rebecca
Liebowitz were ever members of the Firm and The Liebowitz Law Firm continued to exist
independently of the Firm after the transaction."  Dkt. No. 57-20 at 5.

V.    **The Third and Fourth Motions for Sanctions**

On April 4, 2025, Defendant filed a third motion for sanctions against Plaintiff along with a memorandum of law and an attorney declaration in support of the motion.  Dkt. Nos. 52–57, 85–86.  On April 11, 2025, Plaintiff filed a memorandum of law, an attorney declaration, and a declaration by Plaintiff in opposition to the motion.  Dkt. Nos. 75–83, 87–89.  On April 21, 2025, Defendant filed a reply memorandum of law in support of the motion for sanctions along with an attorney declaration.  Dkt. Nos. 92–93.

On April 28, 2025, Defendant filed its fourth motion for sanctions against Plaintiff, along with a memorandum of law in support of the motion.  Dkt. Nos. 97–98.  Plaintiff filed a memorandum of law in opposition to the motion on May 12, 2025, along with an attorney declaration and a declaration of Plaintiff.  Dkt. Nos. 100–102.  Defendant filed a reply memorandum of law and an attorney declaration in further support of the fourth motion for sanctions on May 19, 2025.  Dkt. Nos. 104–105.

## DISCUSSION

In the third motion for sanctions, Defendant seeks: (1) dispositive sanctions based on Plaintiff's discovery violations; (2) an order holding Plaintiff in contempt based on Plaintiff's violations of the Court's discovery orders and prior sanctions order; and (3) sanctions against Plaintiff and his counsel based on his misrepresentations to the Court.  Dkt. Nos. 85, 92.  In the fourth motion for sanctions, Defendant seeks attorney's fees and costs based on the allegations in Plaintiff's amended complaint that Defendant claims lack evidentiary support.  Dkt. Nos. 98, 104.  In particular, Defendant argues that Plaintiff's counsel failed to conduct the reasonable inquiry required to support the allegation that Plaintiff discovered Defendant's alleged infringement on April 6, 2022.  *Id.*

The Court begins with Defendant's third motion for dispositive sanctions based on Plaintiff's discovery violations.

## I.    Discovery Sanctions

Defendant seeks discovery sanctions based on Plaintiff's spoliation of relevant evidence and his failure to produce initial disclosures and documents in accordance with the Court's orders.  The Court first considers spoliation sanctions before turning to Plaintiff's additional discovery violations.

### A.    Spoliation

#### 1.    Plaintiff's Deletion of Relevant Documents

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*, 2025 WL 1962141, at *8 (2d Cir. July 17, 2025) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). Federal Rule of Civil Procedure 37(e) governs one kind of spoliation in particular: loss of electronically stored information ("ESI").  Rule 37(e) states that "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court may award sanctions in accordance with subsections (1) or (2).  Fed. R. Civ. P. 37(e).  Defendant claims that Plaintiff spoliated ESI by deleting electronic documents relevant to this litigation—most notably, documents demonstrating Plaintiff's discovery of the alleged infringement and the date of that discovery.  Dkt. No. 85; Dkt. No. 92 at 2–4.  The Court agrees.

First, Plaintiff had a duty to preserve documents recording his discovery of the alleged infringement and his initial correspondence informing his attorneys of that discovery, as those

documents plainly arose "in the anticipation . . . of litigation."  Fed. R. Civ. P. 37(e); *see also id.*

advisory committee's note to 2015 amendment ("Rule 37(e) is based on [the] common-law duty

. . . to preserve relevant information when litigation is reasonably foreseeable.").  Indeed, it is

undisputed that Plaintiff discovered the alleged infringement—and communicated that discovery

to his attorneys—specifically for the purpose of pursuing litigation.  *See* Tr. at 69:2–24 (Plaintiff

testified at his deposition that he considers search for infringements to be part of his job).

Plaintiff's obligation to maintain these documents therefore attached when he created them.

  Second, Plaintiff violated this duty to preserve and, as a result, relevant information was

lost.  Although the nature of the deletions makes it impossible to identify with certainty what

documents were destroyed, it appears that Plaintiff deleted at least electronic documents

recording his discovery of the alleged infringement and his initial correspondence regarding that

discovery.  Those documents must have existed at some point for this case to have been initiated,

yet Plaintiff has not produced them without any other explanation for their absence.  In fact,

Plaintiff testified at his deposition that for his "whole life"—including in 2022, when he says he

discovered the alleged infraction at issue here—he has systematically "purge[d his] inbox, [his]

emails, [his] text messages" and his "notes app" approximately one year after documents are

created.  Tr. at 212:14–214:15.  Plaintiff does not alter his deletion policy based on the existence

of a pending or anticipated lawsuit.  Tr. at 212:14–214:24, 216:2–23 (Plaintiff testified that he

would keep records relating to a photo for which he sent a demand letter to an infringer "[f]or a

certain period of time until I deem it of no longer use and that's usually after a year" and that it is

irrelevant to that calculation whether or not he filed a federal claim).  In this very case, Plaintiff

admitted to deleting typed notes regarding his initial correspondence with his attorneys.  *Id.* at

216:24–217:22.  Thus, far from merely "fail[ing] to take reasonable steps to preserve [ESI]," Plaintiff intentionally deleted relevant documents.  Fed. R. Civ. P. 37(e).

Finally, it appears that the lost ESI cannot be restored or replaced through additional discovery, as Plaintiff and his attorneys, who are presumably the only individuals who at one point possessed the relevant documents, have not produced them despite repeated requests to do so.  Dkt. No. 85 at 3–4.  Plaintiff and his attorneys have likewise proposed no alternative methods for obtaining the lost information, and the Court sees none.  Defendant has therefore established the elements of ESI spoliation under Rule 37(e).

### 2.    Propriety of Sanctions

The Court accordingly considers which sanctions, if any, are appropriate under Rule 37(e).  Sanctions under this rule are "entrusted to the court's discretion."  Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment.  The Court is not "require[d] . . . to adopt measures to cure every possible prejudicial effect."  *Id.*  Defendant moves for two of Rule 37's most serious measures: outright dismissal of Plaintiff's case or, in the alternative, an adverse-inference instruction regarding the date of Plaintiff's discovery of the alleged infringement.  Dkt. No. 85 at 12.  As amended in 2015, Rule 37(e) divides sanctions into two categories:

(1) upon finding prejudice to another party from loss of the information, [the Court] may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation [the Court] may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Although Defendant generally asserts that Plaintiff acted culpably in intentionally deleting documents relevant to this litigation, Dkt. No. 85 at 1, Defendant falls short of alleging that Plaintiff deleted the documents in order "to deprive [Defendant] of the information's use in the litigation" as required under subsection (e)(2), *see* Fed. R. Civ. P. 37(e)(2); *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *22 (S.D.N.Y. June 20, 2019) ("[T]he intent contemplated by Rule 37[(e)(2)] is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." (citation omitted)).  To be sure, at least some circumstantial evidence supports such an inference.  By his own admission, Plaintiff has filed between 70 and 100 lawsuits in the last five years, *see* Tr. at 31:22–24, and it strains credulity that he has never been informed of his obligation to preserve litigation-related documents and correspondence beyond one year, *see id.* at 213:19–214:10.  Absent additional evidence, however, the Court cannot conclude that the specific reason Plaintiff deleted documents here was to prevent Defendant from using them in this litigation.  The Court is not aware, for example, of any prior court order finding that Plaintiff spoliated ESI and informing him of his obligation to retain such information in the future.  Because insufficient evidence supports an intent-to-deprive finding at this time, ESI spoliation sanctions are available only under (e)(1), not (e)(2).  *See Hoffer v. Tellone*, 128 F.4th 433, 438 (2d Cir. 2025) ("Today, we make clear that the imposition of a sanction under Rule 37(e)(2) requires a finding of 'intent to deprive another party of the information's use in the litigation.'").

Subsection (e)(1) permits sanctions "no greater than necessary to cure the prejudice" to the party harmed by the lost ESI.  Fed. R. Civ. P. Rule 37(e)(1).  The Court has little difficulty making the threshold finding that the deleted documents prejudiced Defendant, as evidence regarding Plaintiff's initial discovery of the alleged infringement is highly relevant to

Defendant's argument that Plaintiff's claim is untimely.  *See* Dkt. No. 16 at 9.  The Copyright
Act requires that a plaintiff file suit within three years of the claim's accrual.  *See* 17 U.S.C. §
507(b).  Under the Second Circuit's so-called discovery rule, that three-year clock begins when a
plaintiff first learns of the infringing conduct.  *See Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d
120, 125 (2d Cir. 2014) ("[C]opyright infringement claims do not accrue until actual or
constructive discovery of the relevant infringement.").  Plaintiff filed suit on May 8, 2024, Dkt.
No. 1, so his copyright claim is untimely if he first discovered the alleged infringement prior to
May 8, 2021.  Documents showing Plaintiff's discovery and communication of such discovery
are directly relevant to substantiating or disproving his allegation that he first discovered the
infringement on April 6, 2022.

Plaintiff argues that other documents support his claimed discovery date, including a
screenshot of the alleged infringement dated April 14, 2022, as well as an email from Plaintiff's
counsel dated July 13, 2022, asking Plaintiff to approve or disapprove the claim.  Dkt. No. 89 at
3; Dkt. No. 55-2.  But while those documents demonstrate that Plaintiff knew of the alleged
infringement by at least April 14, 2022, they do not rule out the possibility that Plaintiff
discovered the alleged infringement much earlier.  Such destruction thus prejudiced Defendant
by denying it information that could have potentially resulted in dismissal of the case.

The question then is whether (e)(1) authorizes the severe remedial measures Defendant
now seeks.  Ultimately, although the deleted documents were highly relevant and may even have
proved dispositive, that does not mean, as Defendant contends, that sanctions in the form of
either dismissal or adverse inferences are warranted.  Even if these more serious measures might
help cure the prejudice to Defendant, they are permitted only under (e)(2), not (e)(1), and as
noted above, Defendant has failed to make the requisite intent-to-deprive showing under (e)(2).

17

Dismissal and adverse inferences are therefore unavailable as spoliation sanctions in this case. This conclusion follows from Rule 37's text and structure, the 2015 Advisory Committee Notes, and the context surrounding the 2015 amendment of Rule 37(e).

To start, although (e)(1) broadly permits a court to impose sanctions "necessary to cure the prejudice"—and "cur[ing] the prejudice" might theoretically require an adverse inference—(e)(2) clarifies only moments later that dismissal and adverse inferences may be imposed "*only* upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2) (emphasis added). It is axiomatic that "[s]tatutes must 'be read as a whole.'" *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 135 (2007) (citation omitted) (explaining that "the language of [one] subparagraph . . . can be understood only with reference to [another] subparagraph"); *see also Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019) (noting that one of the "cardinal principle[s]" of statutory interpretation is "that courts 'must give effect, if possible, to every clause and word of a statute'" (citation omitted)). The Federal Rules of Civil Procedure are no different. *See Nasser v. Isthmian Lines*, 331 F.2d 124, 127 (2d Cir. 1964) ("[I]t is essential that we recognize that the Rules were intended to embody a unitary concept of efficient and meaningful judicial procedure, and that no single Rule can consequently be considered in a vacuum."). Subsection (e)(1)'s appearance next to (e)(2), and the latter's unambiguous delineation of the "only" circumstances in which adverse-inference and dispositive sanctions may be granted, underscore that the sanctions enumerated in (e)(2) are exclusive to that subsection, notwithstanding (e)(1)'s broad language that might otherwise reasonably be read to encompass measures such as an adverse inference. Indeed, there would be no need for two subsections if (e)(1) and its lesser requirement of prejudice were sufficient to support the more severe penalties in (e)(2).

The Advisory Committee Notes, which "provide a reliable source of insight into the meaning of a rule," *United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002), confirm this reading. They warn that "[c]are must be taken . . . to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation." *See* Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment.  That warning, moreover, makes sense given the context in which Rule 37 was most recently amended.  Prior to 2015, Rule 37 stated only that "[a]bsent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system." *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  Under this formulation of the rule, some courts, including the Second Circuit, held that ordinary negligence sufficed to support adverse-inference and dismissal sanctions for ESI spoliation.  *See Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 113 (2d Cir. 2002) (holding that the "culpable state of mind" necessary for adverse inference instructions is ordinary negligence); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) (applying *Residential Funding*'s negligence standard in the context of ESI spoliation).

The 2015 amendment, which split Rule 37(e) into two subsections and required an intent-to-deprive finding for the most serious sanctions, came as a direct response to cases like *Residential Funding* and accompanying concerns regarding the serious punishments those cases authorized.  *See* Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment (explaining that the Rule as amended "rejects cases such as *Residential Funding* . . . that authorize the giving of adverse-inference instructions on a finding of negligence or gross

19

negligence"); *see also Hoffer*, 128 F.4th at 438 (noting that "the 2015 Amendment abrogated the lesser 'culpable state of mind' standard in the context of lost ESI"). The amendment was intended to ensure that the most "severe measures" be reserved for cases with a higher showing of culpability. *See* Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment. Consistent with the rule's text and amendment history, courts since 2015 have consistently refused to award dismissal or adverse-inference sanctions under (e)(1). *See, e.g.*, *Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at *1 (S.D.N.Y. Mar. 12, 2018) (awarding sanctions under (e)(1) but declining to grant "an adverse inference or any claim-dispositive sanction that would only be permissible under Rule 37(e)(2)"); *Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 69 (S.D.N.Y. 2020) ("The extreme remedy of an adverse judgment . . . can only be imposed pursuant to subsection (e)(2) . . . .").

Nor can the Court accomplish by way of its inherent powers that which it cannot by way of (e)(1) or (e)(2). *See* Dkt. No. 56 at 2 (invoking the Court's inherent authority as a basis for dismissing Plaintiff's claim). Federal courts have certain "inherent power[s]," including "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). That power, however, "can be limited by statute and rule." *Id.* at 47. A court therefore must not "rely on its supervisory power as a means of circumventing the clear mandate of a procedural rule." *Id.* at 51. Rule 37(e) as amended in 2015 constitutes such a "clear mandate." As the 2015 the Advisory Committee Notes explain, by "specif[ying] the findings necessary to justify" ESI spoliation sanctions, Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used" in ESI spoliation cases. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. *Contra Zubulake*, 220 F.R.D. at 216 (noting, prior to the 2015 amendment, that

"[t]he authority to sanction litigants for [ESI] spoliation arises jointly under the Federal Rules of Civil Procedure and the court's own inherent powers"). Following this directive, the Ninth Circuit held in *Gregory v. Montana*, that "[g]iven Rule 37(e)'s careful specification of the findings that must be made before any sanction may be imposed for a covered loss of information, it is clear that the rule, by its terms, precludes a court from resorting to inherent authority to evade its strictures." 118 F.4th 1069, 1080 (9th Cir. 2024). The Court agrees and declines to issue dismissal or adverse-inference sanctions pursuant to its inherent authority.

The Court is not left powerless to address Plaintiff's misconduct and the resulting prejudice to Defendant. There are still certain "serious measures" it may employ under (e)(1) as "necessary to cure prejudice." *See* Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment. Among these measures are sanctions "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies." *Id.* The Advisory Committee Notes add that "it may be appropriate to exclude a specific item of evidence to offset prejudice caused by failure to preserve other evidence that might contradict the excluded item of evidence." *Id.*

The Court finds all of the above measures appropriate in this case. Plaintiff's destruction of his ESI deprived Defendant not only of what might have been positive affirmative evidence that Plaintiff's claim is untimely but also of material with which to impeach or undermine Plaintiff's testimony that the claim was timely. Accordingly, it is appropriate to preclude Plaintiff from testifying (in court or through a declaration or affidavit in response to a summary judgment motion) regarding the date upon which he initially discovered the alleged

21

infringement. Moreover, while the Court will not give an adverse inference instruction, Defendant will be permitted to present evidence and argument to the jury regarding the lost documents and may move for instructions to assist the jury's evaluation of the evidence. *See* Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment (explaining that "subdivision (e)(2) [does] not prohibit a court from allowing the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision," so long as the jury is not instructed that "it may draw an adverse inference from loss of information"). These measures constitute the minimum necessary to cure the prejudice to Defendant.

### B.    Other Discovery Violations

#### 1.    Incomplete and Delayed Document Productions

Plaintiff's other discovery misconduct warrants additional consideration. To begin with, Plaintiff's supplemental productions as ordered by the Court's November 20 Order and March 5 Order were untimely and missing documents that Plaintiff had been ordered to be produced. *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 162 (S.D.N.Y. 2012) (imposing sanctions based on tardy production); *Phoenix Four, Inc. v. Strategic Res. Corp.*, 2006 WL 1409413, at *9 (S.D.N.Y. May 23, 2006) (imposing sanctions where the party's late production "has severely disrupted the progress of this litigation"). Even once Defendant brought production deficiencies to Plaintiff's attention, Plaintiff did not act diligently to rectify the issues but instead doled out productions piecemeal. Dkt. No. 86 ¶¶ 4–9, 22. The delays in production are particularly concerning in light of Plaintiff's testimony that he regularly deletes documents that are more than one year old, notwithstanding the documents' relationship to a pending lawsuit. Tr. at 212:14–214:24, 216:2–23. Plaintiff's conduct

prolonging the production schedule risked the destruction of even more documents. *See Elavon,*
*Inc. v. Ne. Advance Techs., Inc.*, 2022 WL 1175039, at *7 (S.D.N.Y. Apr. 20, 2022) (holding that
"[d]efendants acted with intentional bad faith because the affidavit submitted by [defendant]
falsely asserted that they had produced all documents responsive to [plaintiff's] request, when in
fact they had not, and their false assertion lead to a delay that allowed the emails to be deleted
from the accounts due to size limitations").

Plaintiff argues that the Court should disregard his noncompliance with the November 20
Order because the Court already granted sanctions based on that misconduct and further
sanctions would be duplicative. Dkt. No. 89 at 11 ("To issue further sanctions on a matter on
which the Court has considered and fully adjudicated would be inconsistent with the Second
Circuit's general admonition that 'an attorney [or party] should not be disciplined multiple times
by the same court for the same misconduct.'" (quoting *In re Jaffe*, 585 F.3d 118, 120 (2d Cir.
2009)). Plaintiff's premise is faulty. The Court previously denied sanctions for Plaintiff's
purported failure to timely produce all relevant documents following the November 20 Order
because Plaintiff represented that the delays were due to technical issues outside of his control
and that the production was complete by December 30. *See Barbera*, 2025 WL 722682, at *5.
That was not true. The untimely production was due to delays by Plaintiff and counsel in
searching for the documents, and the production was not, in fact, complete as of that date. To
ignore Plaintiff's misrepresentations would be to reward him for his own misconduct. Plaintiff is
liable for sanctions that are not duplicative of the sanctions imposed in the March 5 Order.

Furthermore, Plaintiff has admitted that he continues to withhold documents based on
objections that the Court has held he waived. Plaintiff has stated that he is withholding
settlement agreements with Andy Cohen, Grandari, and Milk Snob because those parties have

not authorized disclosure.  Dkt. No. 89 at 5–6.  Even if Plaintiff had timely raised that objection, it would not prevent production as none of those third parties have objected to Defendant's discovery requests.  *See Hicks v. Leslie Feely Fine Art, LLC*, 2021 WL 3617208, at *4 (S.D.N.Y. Aug. 13, 2021) ("Even documents that are subject to third-party confidentiality agreements or understandings may be discoverable under Rule 26.") (collecting cases); *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 228 F.R.D. 426, 466 (W.D.N.Y. 2004) (holding that "[a]bsent a showing that [third parties] have stated they object to Plaintiff's request for the agreements, Defendants are without standing to assert the alleged confidentiality or non-disclosure provision as a ground for refusing production"); 8A Wright & Miller's Federal Practice & Procedure § 2035 (3d ed. 2025) (hereinafter "Wright & Miller") ("A party may not ask for an order to protect the rights of another party or a witness if that party or witness does not claim protection for himself.").  And Plaintiff has confirmed the existence of yet more documents that he has withheld on the improper and waived basis that production would be unduly burdensome.  Dkt. No. 87 ¶¶ 11–15, 18.

### 2.    Deficient Initial Disclosures

Federal Rule of Civil Procedure 26(a)(1)(A) states, in relevant part, that a party must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment," as well as "a computation of each category of damages claimed by the disclosing party."  Fed. R. Civ. P. 26(a)(1)(A)(i), (iii).  Plaintiff's late-served initial disclosures identified the following individuals:

- Plaintiff himself, who was recorded as only having "[k]nowledge regarding the creation of the copyrighted Photograph" and "any licensing of the copyrighted Photograph."

- Donna Halperin, who was recorded as only having "[k]nowledge regarding the copyright registration of the work at issue.

- Defendant's corporate representatives

Dkt. No. 86-2.  Plaintiff did not list himself as having knowledge of discovery of the infringement despite his testimony that he was the one to uncover it.  Defendant takes further issue with Plaintiff's failure to list Jawad Elatab.  Dkt. No. 85 at 5.  Defendant contends that Plaintiff's records indicate that Elatab is a contributor to the Photograph, such that Plaintiff's ownership rights are in question.  *Id.* at 11; *see* Dkt. No. 86-23 (recording commissions to Elatab for the Photograph).  This contention misunderstands the rule's requirements.  Rule 26(a) states that initial disclosures need only include information for individuals who possess discoverable information "that *the disclosing party* may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(i) (emphasis added).  Defendant does not allege that Plaintiff has sought discoverable information from Elatab to support Plaintiff's claim—rather, Defendant seeks information regarding Elatab to support its defense—so Plaintiff was not required to include Elatab in the disclosures.  *See* Wright & Miller § 2053 ("[T]here is no requirement to disclose anything that the disclosing party will not use, which may include much that is harmful to its case.").

Plaintiff's initial disclosures were, however, deficient in a different respect: They failed to specify damages as required by Rule 26(a)(1)(A)(iii), instead stating simply that "[a]s Plaintiff has not yet obtained discovery of Defendant's financial, sales and other relevant records, Plaintiff cannot make a reasonable estimate of the damages sustained or infringing profits he may recover as a result of Defendant's actions."  Dkt. No. 86-2.  Defendant contends that because Plaintiff's initial disclosures were not served until March 12, 2025, by which point discovery had closed, Plaintiff was obligated to provide a response reflective of the discovery Plaintiff had then obtained from Defendant.  Federal Rule of Civil Procedure 26(a)(1)(E) states

that a "party must make its initial disclosures based on the information then reasonably available to it [and] is not excused from making its disclosures because it has not fully investigated the case." Fed. R. Civ. P. 26(a)(1)(E). A party claiming damages therefore has "the obligation, *when it makes its initial disclosures*, to disclose to the other parties the best information then available to it . . . however limited and potentially changing it may be." 6 Moore's Federal Practice § 26.22[4][c][ii] (3d ed. 2025) (emphasis added). This means that, whenever Plaintiff ultimately served his initial disclosures, the contents of those disclosures—including the specified damages, computation behind those damages, and documentation supporting that computation—all had to be based on the most current information then available to him.

Plaintiff responds that he satisfied his Rule 26(a) obligations because "[t]he Court directed Plaintiff to (re)serve his initial disclosures within seven days of the March 5 Order, which he did." Dkt. No. 89 at 13. That is wrong. The Court did not order *re*-service but rather initial service. *See Barbera* 2025 WL 722682, at *4 ("It appears that plaintiff still has not served his initial disclosures on Defendant."). The fact that Plaintiff did not make his initial disclosures until months after they were due does not permit Plaintiff to constrain the information provided in the disclosures to what he knew at some earlier date. In any event, Rule 26(a) "obliges parties to disclose *and update*" both "damages computations and the documents supporting those computations" throughout the course of litigation, *see Agence France Presse v. Morel*, 293 F.R.D. 682, 685 (S.D.N.Y. 2013) (Nathan, J.) (emphasis added); Fed. R. Civ. P. 26(e)(1)(A), so even if Plaintiff properly "re-served" his initial disclosures on March 12, 2025 (which he did not), he must at the very least now update Defendant regarding the damages calculation and documentation underlying that computation based on current information.

### 3.    Propriety of Sanctions

The Court may issue sanctions under Federal Rules of Civil Procedure 16(f) and

37(b)(2)(A) against a party who fails to obey a scheduling order or an order to provide or permit

discovery.  A district court has "wide discretion in sanctioning litigants appearing before" it.

*Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 177 (2d Cir. 2008) (citing *Design Strategy,*

*Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006)).  A court should, however, "always seek to

impose the least harsh sanction that will remedy the discovery violation and deter such conduct

in the future."  *Farmer v. Hyde Your Eyes Optical, Inc.*, 2015 WL 2250592, at *8 (S.D.N.Y. May

13, 2015).  Moreover, "'dismissal with prejudice is a harsh remedy to be used only in extreme

situations, and then only when a court finds willfulness, bad faith, or any fault' by the non-

complaint litigant."  *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)

(quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)).

Factors relevant to the exercise of this discretion include: (1) the willfulness of the non-

compliant party or the reason for the noncompliance; (2) the duration of the period of

noncompliance; (3) whether the non-compliant party had been warned of the consequences of his

non-compliance; (4) the prejudice to the other party; and (5) the efficacy of lesser sanctions.  *See*

*Barbera*, 2025 WL 722682, at *6; *accord S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d

123, 144 (2d Cir. 2010); *Embuscado v. DC Comics*, 347 F. App'x 700, 700–01 (2d Cir. 2009)

(summary order).  "In addition, an award of sanctions under Rule 37 should effectuate its three

purposes: (1) ensuring the disobedient party does not benefit from non-compliance; (2) obtaining

compliance with discovery orders; and (3) providing a general deterrent in the particular case and

litigation in general."  *Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 208 (S.D.N.Y. 2002).  As

with Defendant's first and second motions for sanctions, all but one of these factors—the

efficacy of lesser sanctions—now weigh in favor of dispositive sanctions. *See Barbera*, 2025 WL 722682, at *6.

Plaintiff's repeated non-compliance with the Court's discovery orders was willful. "A party's conduct will be deemed willful where the contravened orders were clear, the party being sanctioned understood the orders, and the non-compliance was within the party's control." *Urbont v. Sony Music Ent.*, 2014 WL 6433347, at *2 (S.D.N.Y. Nov. 6, 2014); *accord Nieves v. City of New York*, 208 F.R.D. 531, 536 (S.D.N.Y. 2002). Plaintiff's delayed and incomplete document productions failed to comply with the Case Management Plan entered on August 13, the Court's November 20 Order, and the Court's March 5 Order. *See Furry Puppet Studios Inc. v. Fall Out Boy*, 2020 WL 4978080, at *1 (S.D.N.Y. Feb. 24, 2020) ("[A] scheduling order is an order just like any other order of the Court."). Plaintiff has continued to produce documents well past the original deadline for production without a showing that such documents were unavailable at an earlier date. This pattern of noncompliance with the Court's orders supports a finding of willfulness. *See Nieves*, 208 F.R.D. at 536.

Plaintiff's failure to comply with the Court's discovery orders has been pervasive and enduring. Despite the initial October 2024 deadline for Plaintiff's document productions and the Court's November 20 and March 5 Orders setting further deadlines for production, Plaintiff has provided documents in an incremental fashion over the course of more than half a year, and to this day has not come into compliance with the Court's orders. *See Urbont v. Sony Music Ent.*, 2014 WL 6433347, at *3 (S.D.N.Y. Nov. 6, 2014) ("In determining an appropriate sanction, courts also consider the duration of a party's non-compliance, and have found noncompliance for a period of several months sufficient to warrant dismissal or default."); *Alcon Vision, LLC v. Lens.com, Inc.*, 2022 WL 17685501, at *12 (E.D.N.Y. July 7, 2022) ("Periods of noncompliance

as brief as three months may merit dispositive sanctions, while periods that are 'greater than five months favor such sanctions even more heavily.'"); *Ramgoolie v. Ramgoolie*, 333 F.R.D. 30, 38 (S.D.N.Y. 2019) ("Seven months have come and gone, and Defendant has still failed to comply with the Court's order in two critical respects and has made, at best, a pathetic effort to do so. This is more than enough time to merit dispositive sanctions.").

Plaintiff "cannot seriously contend that [he was] not on notice of [his] discovery obligations or of the consequences of noncompliance." *S. New England Tel. Co.*, 624 F.3d at 148. The Court's orders setting forth Plaintiff's discovery obligations were clear, as are the Federal Rules of Civil Procedure. The Court's March 5 Opinion expressly noted that dispositive sanctions could be available for discovery violations such as the ones Plaintiff had committed to date and that only the efficacy of lesser sanctions weighed against dismissing the case at that time. *See Barbera*, 2025 WL 722682, at *6–7 ("The Court . . . finds that dismissal is not warranted at this time, but may revisit the issue if Plaintiff's pattern of noncompliance continues."). Defendant reiterated that possibility to Plaintiff in multiple deficiency letters, Dkt. No. 24 ¶ 8; Dkt. No. 86-4 at 3, as well as in briefing on the sanctions motions.

The discovery delays have prejudiced Defendant by drawing out this litigation and forcing Defendant to bear the litigation costs of combing through Plaintiff's numerous productions to figure out what is missing, sending deficiency letters, and filing numerous motions in pursuit of the discovery to which it is entitled. *See 535 Broadway Assocs. v. Com. Corp. of Am.*, 159 B.R. 403, 409–10 (S.D.N.Y. 1993) (Sotomayor, J.) ("Numerous calls, letters, conferences, court appearances and the filing of motions were necessary before [plaintiff's] counsel deemed it appropriate to offer last-minute, inadequate explanations for its failure to comply with discovery and this Court's orders. To state that the cost associated with the above is

great is to have a penchant for the obvious which I will not indulge in."); *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 229 (S.D.N.Y. 2003) (holding that where "the documents that have been produced were often produced in an untimely, disorganized fashion, after numerous letters and telephone calls were exchanged and court conferences held and after the depositions of the relevant witnesses," the movant "was not only denied the opportunity to prove its case but was denied the opportunity to plan its strategy in an organized fashion as the case proceeded").

        In its March 5 Order, the Court held that "Defendant has not shown that no sanction besides dismissal will suffice to compel Plaintiff's compliance." *Barbera*, 2025 WL 722682, at *7. Although it is a close call, the Court continues to believe that the availability of lesser measures—particularly monetary sanctions—are adequate to remedy Plaintiff's noncompliance and to deter future wrongdoing both in this case and more generally. The Court therefore declines to award dispositive sanctions. In addition to the reasonable attorneys' fees and costs to which Defendant is entitled with respect to the third motion for sanctions, *see Barbera*, 2025 WL 722682, at *7, the Court imposes monetary sanctions for the time Defendant has spent reviewing and corresponding with Plaintiff regarding his deficient productions and disclosures, *see* Fed. R. Civ. P. 37(b)(2)(C). These fees and costs shall be borne by Plaintiff's counsel, *see id.*, and they shall not be duplicative of those fees and costs covered by the Court's March 5 Order. As in its March 5 Order, the Court finds pursuant to Federal Rule of Civil Procedure 37(b)(2)(C) that Plaintiff's failure to comply with the Court's orders was not substantially justified and that circumstances do not make this award unjust. Unless the parties reach an agreement regarding the amount of these monetary sanctions, Defendant shall submit a fee application within thirty days of this Order. Plaintiff may respond to the fee application within fourteen days of the

application.  Defendant may file a reply in support of its fee application within seven days of Plaintiff's opposition, if any.

## II.    Contempt Sanctions

Defendant also seeks contempt sanctions based on Plaintiff's failure to comply with the November 20 and March 5 Orders.  Dkt. No. 85 at 12–15; Dkt. No. 92 at 2, 8.  In particular, Defendant argues that Plaintiff should be held in contempt for failing to "produce all documents responsive to Defendant's document requests" by November 27, 2024, as the Court's November 20 Order required, or by March 12, 2025, as the Court's March 5 Order required.  Dkt. No. 85 at 12–15.  Defendant further asserts that Plaintiff should be held in contempt for failing to serve his initial disclosures and answers to Defendant's contention interrogatories by March 12, 2025, as the Court's March 5 Order required.  *Id.*

"A court has the inherent power to hold a party in civil contempt in order 'to enforce compliance with an order of the court or to compensate for losses or damages.'"  *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)).  "The contempt power serves to 'protect the due and orderly administration of justice and to maintain the authority and dignity of the court.'"  *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).  "[I]n order to hold the alleged contemnor in contempt, the court need only (1) have entered a clear and unambiguous order, (2) find it established by clear and convincing evidence that that order was not complied with, and (3) find that the alleged contemnor has not clearly established his inability to comply with the terms of the order."  *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995).  The court need not find that the violation was willful.  *See Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (citing *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984)).

All three elements are met here.  The Court's November 20 and March 5 Orders were clear and unambiguous.  They unmistakably set forth the dates by which Plaintiff was ordered to produce documents or the specified written discovery.  *See Rodriguez v. New Generation Hardware Store Corp.*, 2024 WL 1765588, at *1 (S.D.N.Y. Apr. 24, 2024) (holding that order compelling defendant to respond to subpoena by a certain date was clear and unambiguous).  As stated, there is clear and convincing evidence that Plaintiff has not complied with those Orders including by failing to produce the documents and discovery responses in advance of the deadlines and contravening the Orders by withholding documents on improper bases.  And Plaintiff has failed to show that he could not have produced the documents at an earlier time. *See BOC Aviation Ltd. v. AirBridgeCargo Airlines, LLC*, 2022 WL 17581775, at *7 (S.D.N.Y. Dec. 12, 2022) ("The burden is on [the purported contemnor] to show their inability to comply with the orders and that they exercised reasonable diligence in attempting to do so.").  Plaintiff has not established—let alone clearly—any hurdle that prevented his earlier production or his production of the documents subject to the nondisclosure agreements.

The more pressing question is the appropriate measure of contempt sanctions.  "When imposing sanctions pursuant to its inherent powers, a federal court 'may go no further than to redress the wronged party "for losses sustained"; it may not impose an additional amount for the sanctioned party's misbehavior.'"  *Keawsri v. Ramen-Ya Inc.*, 2023 WL 7735345, at *2 (S.D.N.Y. Nov. 15, 2023) (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017)).  Defendant seeks contempt sanctions in the form of "[Defendant's] attorneys' fees incurred in connection with [Defendant's] attempt to procure Plaintiff's compliance with the Order."  Dkt. No. 85 at 14–15.  However, because the Court has already awarded discovery sanctions for the attorney's fees associated with Defendant's pursuit of Plaintiff's compliance,

any such contempt sanctions would be duplicative.  The Court therefore does not award

contempt sanctions.

## III.  Rule 11 Sanctions

Federal Rule of Civil Procedure 11(b) provides in pertinent part:

> By presenting to the court a pleading, written motion, or other paper—whether by
> signing, filing, submitting, or later advocating it—an attorney . . . certifies that to
> the best of the person's knowledge, information, and belief, formed after an
> inquiry reasonable under the circumstances: . . . the factual contentions have
> evidentiary support or, if specifically so identified, will likely have evidentiary
> support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. Proc. 11(b).  The 1993 Advisory Committee Notes explain that Rule 11(b) "expands

the responsibilities of litigants to the court," including by "emphasiz[ing] the duty of candor."

Fed. R. Civ. P. 11 advisory committee's notes to 1993 Amendment.  The Supreme Court has

stated that "the central purpose of Rule 11 is to deter baseless filings in district court" and thus

"streamline the administration and procedure of the federal courts."  *Cooter & Gell v. Hartmarx

Corp.*, 496 U.S. 384, 393 (1990).

Rule 11 "targets situations where it is patently clear that a claim has absolutely no chance

of success."  *Caisse Nationale de Credit Agricole-CNCA v. Valcorp., Inc.*, 28 F.3d 259, 264 (2d

Cir. 1994) (quoting *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991)); *see also

Sorenson v. Wolfson*, 683 F. App'x 33, 35 (2d Cir. 2017) (summary order); *Now-Casting Econs.,

Ltd. V. Econ. Alchemy LLC*, 628 F. Supp. 501, 521 (S.D.N.Y. 2022); *Collison v. Wandrd, LLC*,

2024 WL 3252933, at *2 (S.D.N.Y. July 1, 2024).  Rule 11 sanctions should be granted with

caution, only when "a particular allegation is utterly lacking in support."  *In re Highgate

Equities, Ltd.*, 279 F.3d 148, 154 (2d Cir. 2002) (quoting *O'Brien v. Alexander*, 101 F.3d 1479,

1489 (2d Cir. 1996)); *Kiobel v. Milson*, 592 F.3d 78, 81 (2d Cir. 2010); *see also StreetEasy, Inc.

v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) ("With respect to factual contentions, sanctions

may not be imposed unless a particular allegation is utterly lacking in support." (quotation

omitted)); *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003) (Sotomayor, J.)

("When reviewing Rule 11 sanctions . . . we . . . need to ensure that any [sanctions] decision is

made with restraint." (quotation omitted)).  All doubts must be resolved "in favor of the signer."

*Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986).

Defendant seeks Rule 11 sanctions against Plaintiff's counsel for failing to adequately

investigate Plaintiff's claim, and in particular, Plaintiff's assertion that he discovered the alleged

infringement on April 6, 2022.  Dkt. No. 98 at 2.  According to Defendant, Plaintiff's counsel's

failure to take steps to confirm the April 6, 2022 discovery date and  inability to produce

documentation substantiating that date demonstrate that the Complaint and Amended Complaint

are so lacking in evidentiary support as to warrant Rule 11 sanctions in the form of fees and costs

since March 25, 2025, when Defendant purportedly put Plaintiff's counsel "on notice" regarding

the lack of evidentiary support for the claim.  *Id.* at 7; Dkt. No. 104 at 5–6.

The Court disagrees.  Although Plaintiff has failed to produce evidence demonstrating the

*exact* date of his discovery, it is far from "patently clear" that "[his] claim has absolutely no

chance of success" or that Plaintiff's counsel's investigation of the claim has been wholly

deficient.  *Healey*, 947 F.2d at 626.  To the contrary, Plaintiff's counsel has presented at least

some evidence supporting the general timeframe in which Plaintiff claims to have discovered the

alleged infringement.  For example, Plaintiff's counsel points to a screenshot of the alleged

infringement dated April 14, 2022.  Dkt. No. 104 at 4.  Defendant asserts that "April 14 is not

April 6," Dkt. No. 104 at 2, but nor is it May 7, 2021, the date that would time-bar Plaintiff's

claim.  To be sure, it is possible that Plaintiff discovered the alleged infringement well before the

April 14 screenshot.  That is what makes Plaintiff's deletion of his initial notes and

correspondence so prejudicial.  *See supra*.  Rule 11, however, requires only a reasonable inquiry under the circumstances, not the best possible evidence, and Defendant has failed to demonstrate that Plaintiff's claim is so "utterly lacking in support" that his counsel should be sanctioned for bringing the case or for continuing to stand by it.  *See In re Highgate Equities*, 279 F.3d at 154.

## CONCLUSION

Defendant's third motion for sanctions is GRANTED IN PART and DENIED IN PART. Plaintiff will be precluded from testifying (in court or through a declaration or affidavit in response to a summary judgment motion) regarding the date upon which he initially discovered the alleged infringement, and Defendant will be permitted to present evidence and argument to the jury regarding the lost documents and may move for instructions to assist the jury's evaluation of the evidence.  Plaintiff must fulfill its discovery obligations consistent with this opinion, including by providing the withheld settlement agreements with Andy Cohen, Grandari, and Milk Snob, unless those third parties have objected to the requests.  Plaintiff's counsel must pay Defendant's reasonable attorneys' fees and costs with respect to the third motion for sanctions, the time spent reviewing Plaintiff's discovery productions, and the time spent corresponding with Plaintiff concerning Plaintiff's deficient productions.  These fees and costs shall not be duplicative of those covered by the Court's March 5 Order.  Unless the parties reach an agreement regarding the amount of monetary sanctions, Defendant shall submit a fee application within thirty days of this Order.  Plaintiff may respond to the fee application within fourteen days of the application.  Defendant may file a reply in support of its fee application within seven days of Plaintiff's opposition, if any.

SO ORDERED.

Dated: July 25, 2025
      New York, New York

                                        LEWIS J. LIMAN
                              United States District Judge